253 F.2d 584
 Matter of the Petition of ALLEN N. SPOONER & SONS, Inc., as owner of THE DERRICK NO. 17, her boilers, engines, apparel, tackle, etc., THE DECK SCOW NO. 29 and two catamarans, in a cause of limitation of or exoneration from liability.
 No. 67.
 Docket 24549.
 United States Court of Appeals Second Circuit.
 Argued November 18, 1957.
 Decided March 10, 1958.
 
 Macklin, Speer, Hanan & McKernan, New York City (Martin J. McHugh and Thomas F. Daly, New York City, of counsel), for appellant, Allen N. Spooner & Sons, Inc.
 Bigham, Englar, Jones & Houston, New York City (John J. Martin and John M. Aherne, New York City, of counsel), for appellee, The Port of New York Authority.
 Before HAND, MEDINA and LUMBARD, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 Allen N. Spooner & Sons, Inc. appeals from an order dismissing its petition for limitation of or exoneration from liability on the sole ground that the petition was not filed "within six months after a claimant shall have given to or filed with such owner written notice of claim," as provided in 46 U.S.C.A. § 185. As we agree with this disposition of the limitation proceeding, we shall not discuss the other points argued in the briefs but only the question of timeliness of filing, which turns on the interpretation to be given to a letter of August 17, 1955, the particulars of which will presently be stated.
 
 
 2
 Spooner was engaged in making certain repairs to the Navy Finger Pier at the Port Newark Marine Terminal in Newark, New Jersey. The Port of New York Authority had leased the pier from the United States and the repairs were being made pursuant to an agreement between Spooner and the Port of New York Authority, which, under the terms of its lease was under an obligation to preserve and repair the pier. On April 8, 1955 a fire caused extensive damage to the pier and also to the vessels and equipment owned by Spooner and used in connection with the making of the repairs. These vessels are described as Derrick No. 17, Deck Scow No. 29 and two catamarans.
 
 
 3
 On March 1, 1956 the Port of New York Authority sued Spooner in the Supreme Court, New York County, for $740,568.00 alleged to represent damages to the pier and to equipment on the pier. Spooner's petition in the limitation proceeding in the United States District Court for the Southern District of New York was filed on June 13, 1956 and it alleged that the vessels above described had been "totally destroyed" and that their value was "not in excess of $100.00." The usual restraining order was issued, and then the Port of New York Authority moved to dismiss the limitation proceeding, the motion was granted, and this appeal followed.
 
 
 4
 If the letter of August 17, 1955 was a "notice of claim," the petition was filed too late and the dismissal of the limitation proceeding was proper, as more than six months had elapsed before the filing of the petition. [148 F.Supp. 183] The letter is as follows:
 
 
 5
 "August 17, 1955

"Allen Spooner & Son, Inc.
143 Liberty Street
New York 6, N. Y.
"Gentlemen:

 "Re: Port Newark-Repairs to
 Wharf Fender System-Contract
 O & M 267
 
 
 6
 "As you know, the Port Authority incurred severe damage as a result of the fire on April 8, 1955 on the wharf on which you were working under the above contract. The damaged property was insured for its depreciated value and we have therefore elected to file a claim with the Factory Insurance Association, our insurance carrier, for the part of the loss covered by the insurance. The F.I.A. is subrogated to any rights in tort or contract which we possess against the party responsible for the fire, and it has informed us that it may press a claim against you, since it appears that you were responsible for the fire, both because of negligence and because of the risks assumed by you under Contract O & M 267. Since under the provisions of Clause 8 (p. 28) of the contract, the Port Authority has the right to withhold payment to you under all the circumstances, the F.I.A. has instructed us to exercise this right for its protection. Accordingly further action on the moneys in connection with the contract, if any should be payable, must await disposition of the fire damage claim.
 
 
 7
 "We also wish to note that the Port Authority is presently determining the extent of the claim which it may have against you for the cost of restoring the wharf, over and above the amount of insurance collectible. Any judgment or settlement between the F.I.A. and your company should not be regarded as covering this claim of the Port Authority.
 
 
 8
 "Very truly yours,
 Ian B. Packman
 General Superintendent
 of Maintenance"
 
 
 9
 Spooner's argument is that this is not a notice of claim but only a notice of "possible" claim, too ephemeral and vague to comply with the terms of 46 U.S.C.A. § 185. Standard Wholesale Phosphate & Acid Works v. Travelers Ins. Co., 4 Cir., 107 F.2d 373, relied on by Judge Edelstein, is asserted by Spooner to be distinguishable on the ground that the notice in that case stated "at the proper time, we shall look to you for reimbursement on account of any payment * * * which we may be called upon to make in this case." Emphasis is placed by Spooner on the phrase in the letter of August 17, 1955, with reference to the insurance carrier, "it may press a claim against you," and to that relating to the Port of New York Authority itself, "the Port Authority is presently determining the extent of the claim which it may have against you for the cost of restoring the wharf, over and above the amount of insurance collectible."
 
 
 10
 But this is mere quibbling, more consonant with medieval disputes on the subject of how many angels can dance on the point of a needle than with present day notions of reading written communications as those who wrote them presumably intended them to be read, and as they must have been understood by those who received them. The letter states plainly that "it appears that you (Spooner) were responsible for the fire both because of negligence and because of the risks assumed by you under Contract O & M 267," and that both the Port of New York Authority and its insurance carrier had claims against Spooner, the amount of which could not then be determined as the "damaged property was insured for its depreciated value," and the amount of the loss in its entirety was evidently not yet known. Moreover, Spooner was notified that further payments under the contract would be withheld as action thereon "must await disposition of the fire damage claim." To adopt the view that the notice would be effective if the word "shall" had been substituted for "may," but not otherwise, would indeed exalt hair-splitting over substance. Read in its entirety the letter is a notice of claim within the meaning of Section 185.
 
 
 11
 Nor did the Fourth Circuit in the Standard Wholesale case place its decision upon the use of the phrase "we shall look to you" but rather because, 107 F.2d at page 376: "The statute does not require the actual filing of a claim but merely `written notice of claim'. The notice here was sufficient to give the petitioner all the details of the situation with regard to the claim." We agree with this reasoning, but wish to make it clear that the omission specifically to state "we shall look to you for reimbursement," or to use some similar phrase, is, in our opinion, of no significance whatever. We think the whole tenor of the letter of August 17, 1955 is to the effect that Spooner will be held responsible for the loss to the Port of New York Authority and to its insurance carrier. In other words, the letter is a "notice of claim" and could not reasonably be taken to be anything else.
 
 
 12
 Affirmed.
 
 
 13
 HAND, Circuit Judge (concurring).
 
 
 14
 The purpose of putting a time limit upon the owner's privilege of limiting his liability is to advise the claimant in season, so that he may avoid preparing further to press claims that may have small value, or perhaps none whatever. So at any rate it seems to me. However, should it not be a corollary that the claimant shall give notice that there will in fact be a claim to limit, and not merely that there may be? If all that the owner had to do was to file a petition, it might well be that even the warning of a possible claim would be enough, but he must do more; he must either file security for the full value of his ship, or surrender her to a trustee. It does not seem reasonable to me to require this of him upon penalty of losing his privilege when the claimant's position is equivocal. On the other hand it is indeed reasonable to require him to make the claimant define his position. If the claimant refuses to do so, it may be that the period does not begin to run until he does; we need not decide that, because in the case at bar the owner made no attempt of any kind to force the claimant to make his position clear. That ought to throw upon the owner the risk that the claimant would in fact assert the claim which he spoke of only as possible, even though it was a conditional claim. For this reason I concur.