690 F.2d 32
 In the Matter of the Complaint of MORANIA BARGE NO. 190,
INC., as Registered Owner, and Morania Oil Tanker Corp., as
Owner pro hac vice of the BARGE MORANIA NO. 190, for
Exoneration from or Limitation of Liability.
 No. 1242, Docket 82-7119.
 United States Court of Appeals,
Second Circuit.
 Argued May 21, 1982.
Decided Aug. 20, 1982.
 
 Robert J. Zapf, New York City (Robert P. Pohl, Laura V. Becker-Lewke, Burlingham, Underwood & Lord, New York City, of counsel), for appellants.
 Gary H. Wilson, Troy, N. Y. (Louis H. Quinlan, Quinlan & Reilly, Troy, N. Y., of counsel), for appellees.
 Before MANSFIELD, MESKILL and PRATT,* Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Morania Barge No. 190, Inc. and Morania Oil Tanker Corp. (collectively referred to herein as "Morania"), the registered owner and owner pro hac vice respectively of Morania Barge No. 190 ("the Barge"), appeal from an order of the Northern District of New York, Neal P. McCurn, Judge, dismissing their petition for exoneration from or limitation of liability. The district court dismissed the petition on the ground that it was barred by 46 U.S.C. § 185, which requires that such petitions be brought "within six months after a claimant shall have given to or filed with such owner written notice of claim." Having concluded that § 185 does not bar this petition, we reverse.
 
 
 2
 The relevant facts are undisputed. On November 23, 1976, appellee King Service, Inc. ("King") brought suit in New York State Supreme Court against Pittston Marine Transport Corp. ("Pittston") and three other companies, alleging that the defendants had erroneously delivered a barge-load of No. 2 fuel oil rather than the No. 6 fuel oil that King had ordered. King sought damages for replacement of the oil, loss of business, and repair of its customers' machinery, which had been damaged by the use of the wrong grade of oil. King's complaint claimed damages of $366,563.94.
 
 
 3
 The Pittston barge that had delivered the oil in question was Morania Barge No. 190, which had been time chartered by Pittston from its bareboat charterer, Morania Oil Tanker Corp. and of which Morania Barge No. 190, Inc. is the registered owner. Seeking indemnity for any damages that might be assessed against it, Pittston brought Morania into the New York action as a third-party defendant.
 
 
 4
 In three bills of particulars filed in the course of the state suit (dated April 14, 1977, July 18, 1977, and November 21, 1977) King continued to claim damages totalling $366,563.94. This amount was arrived at by adding a claim of $116,563.94 for replacement of the oil and damage to customers' machinery and $250,000 for loss of business and harm to reputation. No other claims were filed against Morania and there was no reason to believe that the total claims would exceed the figure of $366,563.94. The value of the Barge and its freight, on the other hand, was $478,093.75. Since the damages sought were.$112,471 less than any limitation fund would be and there was no reasonable likelihood that claims would exceed the value of the Barge and its freight, Morania did not file a petition for exoneration from or limitation of liability.
 
 
 5
 On April 20, 1981, at the second status conference that had been held in the state court suit, after the action had been pending almost 41/2 years and the case had been put on the state court's "Ready for Trial" calendar, King moved to amend its complaint and bills of particulars to increase the amount of damages sought to $2,500,000, claiming that it had suffered additional loss of business and harm to reputation through the year 1981 that was not reflected in its complaint or bills of particulars. Over the defendants' objections the state trial judge granted King's motion.
 
 
 6
 On October 16, 1981 Morania filed its petition in this action, seeking exoneration from or limitation of liability pursuant to 46 U.S.C. § 183. On February 1, 1981, Judge McCurn dismissed the petition on the ground that it had not been brought within six months of notice of claim, as required by § 185.
 
 DISCUSSION
 
 7
 Title 46 U.S.C. § 185 provides, in pertinent part:
 
 
 8
 "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter...."
 
 
 9
 The statute is a time bar with respect to a vessel owner's filing of a petition for limitation of liability. Deep Sea Tankers, Ltd. v. The Long Branch, 258 F.2d 757, 772 (2d Cir. 1958), cert. denied, 358 U.S. 933, 934, 79 S.Ct. 316, 320, 3 L.Ed.2d 305 (1959); In re Allen N. Spooner & Sons, Inc., 253 F.2d 584, 585 (2d Cir.), appeal dismissed, 358 U.S. 30, 79 S.Ct. 9, 3 L.Ed.2d 48 (1958). Its purpose is to require that a shipowner, in order to gain the benefit of his statutory right to limit his liability, act promptly. In re Goulandris, 140 F.2d 780, 781 (2d Cir.), cert. denied, 322 U.S. 755, 64 S.Ct. 1268, 88 L.Ed. 1584 (1944). As soon as a claim is filed against him the shipowner has a six-month period within which to investigate whether the amount of the claim or other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value of his ship. If such an excess appears reasonably possible, he will be barred from taking advantage of the right to limit his liability unless he files his petition within the six-month period. Indeed, even when doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain, In re Allen N. Spooner & Sons, Inc., supra, 253 F.2d at 586-87; Curtis Bay Towing Co. v. Tug Kevin Moran, 159 F.2d 273 (2d Cir. 1947); Grasselli Chemical Co. No. 4, 20 F.Supp. 394 (S.D.N.Y.1937). The rationale was succinctly described by Judge Learned Hand (concurring) in Spooner as follows:
 
 
 10
 "The purpose of putting a time limit upon the owner's privilege of limiting his liability is to advise the claimant in season, so that he may avoid preparing further to press claims that may have small value, or perhaps none whatever. So at any rate it seems to me. However, should it not be a corollary that the claimant shall give notice that there will in fact be a claim to limit, and not merely that there may be? If all that the owner had to do was to file a petition, it might well be that even the warning of a possible claim would be enough, but he must do more; he must either file security for the full value of his ship, or surrender her to a trustee. It does not seem reasonable to me to require this of him upon penalty of losing his privilege when the claimant's position is equivocal. On the other hand it is indeed reasonable to require him to make the claimant define his position. If the claimant refuses to do so, it may be that the period does not begin to run until he does; we need not decide that, because in the case at bar the owner made no attempt of any kind to force the claimant to make his position clear. That ought to throw upon the owner the risk that the claimant would in fact assert the claim which he spoke of only as possible, even though it was a conditional claim. For this reason I concur." 253 F.2d at 586-87.
 
 
 11
 When the owner, as here, does "force the claimant to make his position clear," with the result that the claimant affirmatively states on the record that his total claims amount to a figure that is substantially less than the value of the ship and no other claims are in the offing, the statutory time bar does not apply. The period would then begin to run only upon its appearing that there is a reasonable possibility that the claims would exceed the value of the ship. To hold otherwise would be to obligate a shipowner to go to the expense of posting security and taking the other steps necessary to commence a limitation proceeding when the claimant's specific representations demonstrate that such a proceeding will be wholly unnecessary. For instance, if a claim of $100,000 were made against a ship worth well over $1 million to require the filing of a petition for limitation of liability would serve no purpose other than to clog the courts with unneeded petitions and cause great expense to shipowners without in any way benefiting claimants. Against the possibility that subsequent events might prove that a claim was understated, common experience demonstrates that the great majority of claimants tend to overstate the amount of their claims and that it is a rare instance when a claimant fails to anticipate all damages. A rule requiring a shipowner to seek limitation of liability regardless of the amount claimed might encourage claimants to understate the amount of their damage in the hope that the shipowner would be misled into not filing a timely petition for limitation.
 
 
 12
 Applying these principles, appellant Morania was not obligated to institute a limitation of liability proceeding within six months after King first gave notice of its claims since the notice made clear that King's total damages would be substantially less than the value of the vessel and its freight (the limitation fund) and there were no claims by anyone other than King. Moreover, for a period of over 41/2 years after King commenced suit it continued to represent in its complaint and verified bills of particulars served on April 14, 1977, July 18, 1977, and November 21, 1977, that its total damages were $366,563.94, consisting of $116,563.94 for replacement of oil and cost of repairs to its customers' oil burners and $250,000 for loss of business and harm to its reputation. Morania was entitled to rely upon these sworn representations and since the claims were substantially less than the value of the Barge and its pending freight ($478,093.75), Morania was not required by 46 U.S.C. § 185 to file a complaint for exoneration from or limitation of liability until King thereafter amended its complaint and bill of particulars to increase its claim by $2,500,000. Thereupon Morania timely filed its petition in the present proceeding.
 
 
 13
 The order of the district court is reversed.
 
 
 
 *
 Judge Pratt was a United States District Judge for the Eastern District of New York, sitting by designation, at the time of argument