**In the Matter of the Complaint of OKEA-NOS OCEAN RESEARCH FOUNDATION, INC., as owner pro hac vice and Odin Enterprises, Inc., as owner of the M/V FINBACK, II, plaintiffs for exoneration from or limitation of liability.**

No. 87 Civ. 7247 (JMC).

United States District Court,
S.D. New York.

Jan. 11, 1989.

Badiak & Will by Alfred J. Will, New York City, for plaintiffs.

Kreindler & Kreindler by David Beekman, New York City, for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Claimants' motion to dismiss is denied. 46 U.S.C.App. § 185; Fed.R.Civ.P. Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

## BACKGROUND

Petitioner Okeanos Ocean Research Foundation, Inc. ["Okeanos"] conducted daily whale watching excursions with passengers, on board the Finback II, a vessel owned by petitioner Odin Enterprises, Inc. On June 28, 1986 while engaged in a whale watching excursion off the coast of Montauk, Long Island, the vessel was struck by a "rogue wave" which caused some of the passengers to be thrown about the deck and to suffer various injuries. The vessel immediately returned to its berth in Montauk Harbor and several passengers were taken to the hospital for examination and treatment.

Subsequently, several of the passengers commenced actions for personal injuries against petitioners in both state and federal court. On October 9, 1987 petitioners instituted this proceeding, pursuant to 46 U.S.C.App. § 185 ["section 185"] and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure ["Rule F"], for exoneration from or limitation of liability [the "limitation petition"]. In accordance with section 185 and Rule F, petitioners posted with the Court a security equal in value to the Finback II. In addition, on October 13, 1987 the Court entered an order staying any pending or future lawsuits against petitioners arising out of the June 28, 1986 voyage. *See* Order, 87 Civ. 7247 (JMC) (S.D.N.Y. Oct. 13, 1987).

Claimants Fred R. Oppenheimer and Maureen Tracey, passengers on the June 28, 1986 voyage, now move to dismiss the limitation petition on the ground that it was not commenced within the six month statute of limitations provided by section 185. Claimants argue that a letter sent to Okeanos by Oppenheimer's attorney on October 6, 1986 served to trigger the running of the six month time limit. Thus, claimants contend that the limitation petition, which was filed on October 9, 1987, is untimely. Petitioners oppose the motion, contending that the letter from claimants' attorney is insufficient to trigger the six month statute of limitations under section 185.

## DISCUSSION

Under the Limitation of Liability Act, 46 U.S.C.App. § 181 *et seq.* (1982), a shipowner may restrict its liability arising out of the operation of the owner's vessel to the value of the vessel and its pending freight.[1] *See In re Vatican Shrimp Co. v. Solis*, 820 F.2d 674, 677 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987). Prior to 1936, a vessel owner could institute a proceeding to limit liability at any time, even after the ques-

---

1. There are two procedural methods a shipowner can use to limit its liability. *See Vatican Shrimp*, 820 F.2d at 677. Under section 185 a shipowner may file a limitation petition in federal district court. In addition, under 46 U.S.C. App. § 183, a shipowner may plead limitation as a defense in its answer to a complaint. *See id.* Only the former method is at issue in the instant action.

tion of liability had been decided against him. *See Deep Sea Tankers v. The Long Branch*, 258 F.2d 757, 772 (2d Cir.1958), *cert. denied*, 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 511 (1959). To curb this abuse, in 1936, Congress amended section 185 to provide that an owner must file a limitation petition within six months [2] after receiving a "written notice of claim." [3] The law is well settled that "[t]he statute is a time bar with respect to a vessel owner's filing of a petition for limitation of liability." *In re Morania Barge No. 190, Inc.*, 690 F.2d 32, 33 (2d Cir.1982) (citing *Deep Sea Tankers*, 258 F.2d at 772); *see In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 585 (2d Cir.1958).

■ Section 185 does not define what constitutes a "written notice of claim." Courts interpreting the statute have concluded that the notice must inform the owner of a claimant's intention to seek damages. *See Rodriguez Moreira v. Lemay*, 659 F.Supp. 89, 90–91 (S.D.Fla.1987); *In re N.Y.T.R. Transp. Corp.*, 105 F.R.D. 144, 146 (E.D.N.Y.1985); *In re J.E. Brenneman Co.*, 157 F.Supp. 295, 297 (E.D. Penn.1957); *Petition of Anthony O'Boyle, Inc.*, 51 F.Supp. 430, 431 (S.D.N.Y.1943). If the claimant makes his intention to seek damages known, the fact that the damages claimed are uncertain does not excuse the owner from complying with the statutory time period. If it appears "reasonably possible" that such damages may exceed the value of the owner's ship, the owner must file a limitation petition within six months of receiving a written notice of claim. *See Morania Barge*, 690 F.2d at 34 (citing *Spooner*, 253 F.2d at 586–87). Mere knowledge of the event in question, however, is not enough to commence the running of the statutory time period. *See In re Bayview Charter Boats, Inc.*, 692 F.Supp. 1480, 1484 (E.D.N.Y.1988); *In re American M.A.R.C., Inc.*, 224 F.Supp. 573, 576 (S.D.Cal.1963); *J.E. Brenneman*, 157 F.Supp. at 297.

■ Although a notice of claim must obviously be in writing, it need not be in any particular form. *See O'Boyle*, 51 F.Supp. at 431. While it is clear that service of process upon the vessel owner will trigger the six month period, *see Bayview*, 692 F.Supp. at 1484, not all written documents constitute notice within the meaning of the statute. For example, a report to the owner's insurance company is not sufficient, as it contained no claim for damages against the owner. *See O'Boyle*, 51 F.Supp. at 431. Similarly, a document given to a vessel owner simply listing the extent of damage caused by the vessel and not specifically contending that the owner is liable for the damage, is not a written notice of claim. *See J.E. Brenneman*, 157 F.Supp. at 297.

■ A letter written to a vessel owner may constitute a "written notice of claim." [4] In *Spooner*, the Second Circuit

---

**2.** " '[T]he real purpose of the six months limitation ... was to preclude the interjection of undue delays and expense into proceedings.' " *Jung Hyun Sook v. Great Pac. Shipping Co.*, 632 F.2d 100, 103 (9th Cir.1980) (quoting *In re American M.A.R.C., Inc.*, 224 F.Supp. 573, 576 (S.D. Cal.1963)). Prior to the 1936 amendment, "undue delay was caused because owners often waited to file the limitation petition until after a trial on the merits or even after the claimants had received a favorable judgment." *Great Pac. Shipping*, 632 F.2d at 103.

**3.** Title 46 U.S.C.App. § 185 provides, in pertinent part: "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter...."

**4.** *Compare Spooner*, 253 F.2d at 586 (letter is written notice of claim although it only asserts that the author "may" press a claim) *and Bayview*, 692 F.Supp. at 1486 (letter from claimants' attorney is written notice of claim as it "informed [the owner] of the incident at issue and the possibility that [the owner] would be held liable....") *with Lemay*, 659 F.Supp. at 91 (letter from claimant's counsel is not notice of claim because it "does not inform the [owners] of [claimant's] demand of a right or supposed right, blame them for any damage or loss, or call upon them for something due [claimant].") *and In re Boat Ariel, Inc.*, 30 F.Supp. 110, 111 (S.D.N.Y.1939), *aff'd on other grounds*, 119 F.2d 866 (2d Cir.1941) (letter from attorney retained by "the families of certain of the members of the crew" who were lost at sea is not notice of claim because the statute requires "something more than notice of claim from anonymous claimants.").

considered whether a particular letter was a written notice of claim within the meaning of section 185. *See* 253 F.2d at 584. The letter, written by the General Superintendent of Maintenance of the Port Authority, related to a pier leased by the Port Authority, which was severely damaged by fire. The letter stated in pertinent part:

As you know, the Port Authority incurred severe damage as a result of the fire on April 8, 1955 on the wharf on which you were working under the above contract. The damaged property was insured for its depreciated value and we have therefore elected to file a claim with the Factory Insurance Association, our insurance carrier, for the part of the loss covered by the insurance. The F.I.A. is subrogated to any rights in tort or contract which we possess against the party responsible for the fire, and it has informed us that it may press a claim against you, since it appears that you were responsible for the fire, both because of negligence and because of the risks assumed by you....

We also wish to note that the Port Authority is presently determining the extent of the claim which it may have against you for the cost of restoring the wharf, over and above the amount of insurance collectible. Any judgment of settlement between the F.I.A. and your company should not be regarded as covering this claim of the Port Authority.

*Id.* at 585.

In *Spooner,* the owner argued that the letter was only notice of a "possible" claim and was too vague to comply with section 185. The owner emphasized the phrase which stated, with reference to the insurance company, "it may press a claim against you." The Second Circuit rejected the owner's argument, reasoning that to require the word "shall" instead of the word "may" in order to constitute effective notice "would indeed exalt hair-splitting over substance." *Id.* at 586. The Second Circuit noted that the author of the letter clearly blamed the owner for the damage, as the letter stated, "it appears that you were responsible for the fire both because

of negligence and because of the risk assumed by you...." *Id.* at 585.

Moreover, in analyzing the letter, the court agreed with the reasoning of the Fourth Circuit in *Standard Wholesale Phosphate & Acid Works v. Travelers Ins. Co.,* 107 F.2d 373, 376 (4th Cir.1939), which held that notice is sufficient if it informs petitioner of all the details of the situation that gave rise to the claim. Thus, the *Spooner* court held that the letter was a notice of claim within the meaning of section 185, as it informed the owner of the details of the incident and stated that the owner appeared to be responsible for the damage in question.

Recently, two district court cases, *In re Bayview Charter Boats, Inc.,* 692 F.Supp. 1480 (E.D.N.Y.1988) and *Rodriguez Moreira v. Lemay,* 659 F.Supp. 89 (S.D.Fla. 1987), each analyzed whether a particular letter was a notice of claim within the meaning of section 185. In *Bayview,* claimant sustained severe personal injuries when he was struck by Bayview's vessel while swimming. The court considered whether the following letter, sent by claimant's attorney to Bayview, was a notice of claim:

Please be advised we represent Joseph Russo in connection with the serious personal injuries he sustained on the above date due to the gross negligence of your employee Jack Goeghan in connection with the operation of an outboard motor boat in the course of his employment with Bayview Charter Boats.

Please refer this letter to your insurance and/or legal representative and have them contact the undersigned at their earliest convenience.

*Bayview,* 692 F.Supp. at 1485. Relying on the reasoning set forth in *Spooner,* the court found that the letter constituted a notice of claim under the statute. The court stated that the letter informed the owner of the details of the incident and stated the possibility that the claimant would hold the owner liable for the injuries sustained in the incident. *See* id.

In *Lemay,* claimant's counsel sent a letter to the owners of a vessel that had

injured claimant. The letter informed them that claimant "received injuries in a boat accident which require[d] treatment and hospitalization, and ... describe[d] some of the circumstances relevant to the accident." *Lemay*, 659 F.Supp. at 91. The court stated that the letter in question

> does not inform the [owners] of [claimant's] demand of a right or supposed right, blame them for any damage or loss, or call upon them for something due [claimant]. The fact that the [owners] may have known of [claimant's] demand is irrelevant; the document must inform them of this fact.

*Id.* Thus, the court found that the letter did not constitute notice under section 185.

■ In light of the reasoning set forth in *Spooner* and the other cases discussed above, the Court now considers whether the October 6, 1986 letter, sent by Oppenheimer's attorney to Okeanos, constitutes a written notice of claim within the meaning of section 185. The letter states:

> RE: Fred Oppenheimer
> Date of Accident: 6/28/86
>
> Dear Sir or Madam:
>
> Please be advised that we have been retained by the above named to represent him in an action arising out of injuries he sustained while on your boat, the FIN BACK II, on the above date.
>
> Please forward a copy of this letter to your insurance carrier if you are insured, and contact this office to discuss this matter further.

Affirmation of David Beekman, Exh. A, 87 Civ. 7247 (JMC) (S.D.N.Y. Dec. 23, 1987).

Okeanos argues that the letter is not a notice of claim because it did not inform Okeanos of claimant's intention to seek damages. Specifically, Okeanos asserts that the letter does not blame Okeanos for the alleged injuries suffered by claimant or make a demand for something due claimant.[5] Claimant, on the other hand, contends that the letter indicates that he intends to hold Okeanos liable for his injuries.

The letter in question is distinguishable from the letters in *Spooner* and *Bayview*. In *Spooner*, the letter stated the cause of the damage in question and also plainly blamed the owner for the damage. *See Spooner*, 253 F.2d at 585. Similarly, the letter in *Bayview* noted that claimant's injuries were sustained "in connection with the operation of an outboard motor boat" by a specific employee of Bayview and clearly blamed the injuries on the "gross negligence" of the employee. *Bayview*, 692 F.Supp. at 1485. Furthermore, both the letter in *Spooner* and in *Bayview* characterized the nature and/or extent of the damage in question, thus indicating the magnitude of the possible claims.

Unlike the letters in *Spooner* and *Bayview*, the instant letter is void of *any* details of the incident in question. The letter states that claimant received "injuries," but does not mention the cause of the injuries, the type of injuries sustained or the severity of the injuries. Thus, Okeanos could not know whether Oppenheimer was injured in connection with the wave that struck the ship, or whether he was injured in some other manner, unconnected to the

---

5. Okeanos argues, in the alternative, that even if the letter is technically a notice of claim, Oppenheimer's equivocation and failure to cooperate with the investigation of the incident serves to toll the running of the statute of limitations. *See* Plaintiff's Memorandum of Law, at 5–7, 87 Civ. 7247 (JMC) (S.D.N.Y. Feb. 20, 1988). Okeanos points to the fact that its investigator sent Oppenheimer a letter requesting medical records so that Okeanos could evaluate Oppenheimer's alleged injuries. *See* Affidavit of Captain Joseph R. Stapleton, ¶ 9, 87 Civ. 7247 (JMC) (S.D.N.Y. Feb. 8, 1988). Oppenheimer never responded to this request.

Okeanos relies on Judge Learned Hand's concurrence in *Spooner* which states that where a claimant's position is equivocal and the vessel owner requests the claimant to "define his position" but the claimant refuses, the time period may be tolled. *See Spooner*, 253 F.2d at 586–87 (Hand, J., concurring), *quoted with approval in Morania Barge*, 690 F.2d at 34.

Moreover, petitioners make the additional argument that even if the letter is technically notice to Okeanos, it does not serve as notice to Odin Enterprises, Inc., as it was only sent to Okeanos.

The Court, however, does not reach these arguments as it finds that the letter is not a written notice of claim within the meaning of section 185.

wave. Moreover, like the letter in *Lemay*, the instant letter fails to blame Okeanos for the injuries or make it clear that claimant intends to seek damages from Okeanos.

Under section 185, not only must a vessel owner file a limitation petition in federal court, he must also file a security for the full value of the ship or surrender the ship to a trustee. *See* 46 U.S.C.App. § 185. It is not reasonable to require an owner to take this action when claimant sends an ambiguous letter. *See Spooner*, 253 F.2d at 586 (Hand, J., concurring) (requiring owner to post security or surrender ship when claimant's position is "equivocal," seems unreasonable); *see also In re Boat Ariel, Inc.*, 30 F.Supp. 110, 111 (S.D.N.Y. 1939), *aff'd on other grounds*, 119 F.2d 866 (2d Cir.1941) (letter from attorney retained by "the families of certain of the members of the crew" who were lost at sea is not notice of claim because the statute requires "something more than notice of claim from anonymous claimants.").

 Although the court in *Spooner* cautioned against exalting "hair-splitting over substance," the letter in the instant action lacks the substance that would make it a notice of claim within the meaning of section 185. A vessel owner is not required to infer that someone may bring a claim; a claimant must make his intentions clear in order to trigger the six month statute of limitations. Moreover, a rule requiring a claimant to state his intention clearly in order to start the running of the statutory time limit will deter claimants from sending a vague letter in the hope that the vessel owner will fail to file a timely petition. *Cf. Morania Barge*, 690 F.2d at 34 ("A rule requiring a shipowner to seek limitation of liability regardless of the amount claimed might encourage claimants to understate the amount of their damage in the hope that the shipowner would be misled into not filing a timely petition for limitation."). Accordingly, the Court finds that the letter in question does not constitute a written notice of claim within the meaning of section 185.[6] Thus, claimants' motion to dismiss is denied.

## CONCLUSION

Claimants' motion to dismiss is denied. 46 U.S.C.App. § 185; Fed.R.Civ.P. Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

SO ORDERED.

---

**6.** It appears that the first notice of claim received by Okeanos was in the form of a summons with notice sent by two other passengers on April 13, 1987. *See* Affidavit of Alfred J. Will, at 4, 87 Civ. 7247 (JMC) (S.D.N.Y. Feb. 5, 1988). Petitioners filed the limitation petition within six months, on October 9, 1987.

The fact that other passengers may have been injured on the June 28, 1986 voyage, leading to the possibility of multiple claims, is not dispositive. Mere knowledge of the incident, absent a written notice of claim, is not enough to trigger the statute. *See In re Bayview Charter Boats, Inc.*, 692 F.Supp. 1480, 1484 (E.D.N.Y.1988); *see also In re American M.A.R.C., Inc.*, 224 F.Supp. 573, 576 (S.D.Cal.1963) ("[T]he mere fact that a petitioner knows that an accident has occurred and that someone has a grievance against him is of no significance. He must have effective written notice of a claim before the time limitation starts to run against him.").