**In the Matter of The COMPLAINT OF SALTY SONS SPORTS FISHING, INC. and Shane McGinnis, as Owners of the F/V "Salty Sons" for Exoneration from and Limitation of Liability**

No. CIV.H–01–3121.

United States District Court,
D. Maryland.

March 19, 2002.

Stephen M. Calder, Palmer, Biezup and Henderson, Philadelphia, PA, for plaintiff.

Robert M. Schwartzman, Prabir Chakrabarty, Resnick, Abraham and Schwartzman, LLC, for claimants.

*MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiffs, Salty Sons Sport Fishing, Inc. and Shane McGinnis (hereinafter "petitioners"), as owners of a sports fishing boat named SALTY SONS (hereinafter the "Vessel"), have filed suit seeking exoneration from or limitation of liability arising from an incident that occurred several years ago aboard the Vessel. Petitioners have brought suit under 46 U.S.C.App. §§ 183–189. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules Of Civil Procedure.

On October 22, 2001, petitioners, residents of Pennsylvania, filed in this Court their "Complaint For Exoneration From or Limitation of Liability." Petitioners sought an order directing the issuance of a *Monition* to all persons claiming damages in connection with an incident which occurred on July 30, 1999 when an alleged business invitee was injured while aboard the Vessel. On October 23, 2001, this Court entered the requested Order, requiring all persons claiming damages to file their claim in this Court within forty-five days or be defaulted. The Order also restrained the further prosecution of any and all actions to recover damages as a result of the incident, and enjoined the commencement of any further suit in connection with the incident.

In their complaint, petitioners seek a declaration from this Court stating that they are not liable for any loss, damage or injury under any claim arising as a result of the incident in question. Alternatively, in the event that they are adjudged liable for any claims for damages, petitioners ask that such liability be limited to their interest in the Vessel.

On December 5, 2001, Steven Todd Weaver and Lori Weaver (hereinafter "claimants"), also residents of Pennsylvania, filed in this case Claims against petitioners (Paper No. 5). Count I seeks a recovery for negligence, and Count II is brought for loss of consortium. Further, claimants seek to reserve their right to a trial by jury on the merits of their claims.

Presently pending before the Court is claimants' motion for summary judgment. In their motion, claimants contend that petitioners' complaint is barred by the applicable six-month limitations period. Memoranda and exhibits have been filed by the parties in support of and in opposition to the pending motion. No hearing is necessary. *See* Local Rule 105.6. For the reasons stated herein, claimants' motion for summary judgment will be denied.

# I

## Background Facts

The SALTY SONS is a 33–Foot, 1985 Trojan Sports Fishing Vessel, equipped with 1999 twin 300 horsepower Cummins diesel engines. It is owned and operated by the petitioners. On July 30, 1999, the Vessel was operating for sport fishing purposes 56 miles off the coast of Ocean City, Maryland. Claimants contend that the Vessel had been chartered by claimant, Steven Weaver ("Weaver"), for a fishing trip for himself and several employees of his company, Clean Energy Maintenance Inc.

While off the coast of Ocean City, Weaver was allegedly handed an explosive device by Melvin McGinnis, the Mate, who, it is alleged, subsequently lit the device, causing it to explode in Weaver's hand. As a result of the explosion, Weaver lost part of his hand and suffered injuries to his chest and ears. Claimants contend that the incident occurred within the privity and knowledge of the petitioners and their agents, servants or employees and that petitioners are therefore responsible for the negligence that caused Weaver's injuries.

# II

## Applicable Principles of Law

The Limitation of Vessel Owner's Liability Act, 46 U.S.C.App. §§ 181–196, provides a mechanism in which a shipowner may limit its liability arising out of the operation of the owner's vessel to the value of the vessel and its pending freight. *In the matter of the Complaint of Okeanos Ocean Research Found., Inc.,* 704 F.Supp. 412 (S.D.N.Y.1989) (citing *In re Vatican Shrimp Co. v. Solis,* 820 F.2d 674, 677 (5th Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987)). Legislation limiting shipowners' liability was first enacted in 1851 to provide assistance to American shipowners and thereby place them in a favorable position in the competition for world trade. *Maryland Cas. Co. v. Cushing,* 347 U.S. 409, 414, 74 S.Ct. 608, 98 L.Ed. 806 (1954).

The right to limit liability is set forth in Section 183, which provides that "a vessel owner's liability for losses and injuries occurring on his vessel shall be limited to the owner's 'interest' in the vessel and his freight." *In the matter of the Complaint of Bayview Charter Boats, Inc.,* 692 F.Supp. 1480, 1482 (E.D.N.Y.1988) (citing 46 U.S.C.App. § 183(a)). Liability cannot be limited in every case, but only when it occurs "without the 'privity or knowledge' of the vessel owner".... § 183(a) "does not allow limitation to be claimed where the loss claimed occurred with the owner's knowledge." *Id.*

Prior to 1936, a vessel owner could seek limitation of liability at any time, even by instituting an independent proceeding after losing on the liability issue. *Cincinnati Gas & Electric Co. v. Abel,* 533 F.2d 1001, 1003 (6th Cir.1976) (citation omitted). However, in 1936 Congress amended Section 185 to provide that "such a petition must be filed within six months after *written notice of a claim.* Though the statute uses the word 'may,' it has been held to mean 'must' in the sense that an owner may file such proceedings within six months or not at all." *Id.* (Emphasis supplied). "The requirement that a petition under Section 185 be filed within six months of notice has been held to be a condition precedent which must be met in order for an admiralty court to have jurisdiction of a limitation proceeding." *Id.*

If there has been compliance with § 185, the district court may stay all claims against the owner stemming from the incident, and notice is then sent to all potential claimants. *Bayview,* 692 F.Supp. at 1483. After all claimants have been notified, the court conducts a proceeding

known as a "concursus," in which the court, without a jury, tries all issues related to the limitation proceedings. *Id.* "Thus, the Court determines 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if the limitation is granted, how the [limitation] fund should be distributed.'" *Id.* (citing *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir.1988)) (quoting *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir.1979)).

There are two ways to invoke the limitation of liability provision, either by filing an independent petition in admiralty, or by pleading it as an affirmative defense in an action. *Cincinnati Gas & Electric Co.*, 533 F.2d at 1003. Therefore, a ship owner can file a petition under Section 185, or he may also assert the limitation defense by pleading it in an answer to a complaint in either federal or state court. *Bayview*, 692 F.Supp. at 1483.

In *Bayview*, the Court found that the six month limitations period had not been complied with, but determined that since the defense had been raised in a claim filed in state court, there was no federal jurisdiction over the limitations issue. The court stated that if "claimants brought their personal injury claims in a federal court, that court would have had subject matter jurisdiction to decide issues concerning the availability of the limitation defense prior to considering the case on the merits." *Id.* at 1487 (citing *Deep Sea Tankers v. The Long Branch*, 258 F.2d 757, 772–73 (1958)).

Section 185 itself does not define what constitutes a "written notice of claim." Courts interpreting the statute have concluded that the notice must inform the owner of a claimant's intention to seek damages. *Okeanos*, 704 F.Supp. at 414, (citations omitted). If a claimant's intention to seek damages is made known to the vessel owner, the fact that the amount of damages are uncertain does not prevent the running of the limitations period if it appears "reasonably possible" that the amount of damages may exceed the value of the owner's ship. *Id.* (citing *In re Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir.1982)). However, mere knowledge that the event occurred does not commence the running of the limitations period. *Id.* Nevertheless, letters sent by claimants to vessel owners may under appropriate circumstances constitute notice of claim. *In the matter of the Complaint of Beesley's Point Sea–Doo, Inc.*, 956 F.Supp. 538, 540 (D.N.J.1997).

The court in *In the matter of Loyd W. Richardson Construction Co.*, 850 F.Supp. 555 (S.D.Tex.1993), provided a list of factors which other courts have considered in determining whether a mere letter constitutes written notice of a claim under § 185. They include: "whether the letter (1) informs the vessel owner of claimant's 'demand of a right or supposed right,' (2) blames the vessel owner 'for any damage or loss,' or (3) calls upon the vessel owner for something due claimant." *Id.* at 557 (citations omitted). "'[A] writing may constitute sufficient notice of claim even if it is couched in tentative terms, referring only to the 'possibility' of legal action.'" *Id.* (quoting *Bayview*, 692 F.Supp., at 1485) (citing *In re Petition of Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir.), *cert. dismissed*, 358 U.S. 30, 79 S.Ct. 9, 3 L.Ed.2d 48 (1958)). Thus, whether or not a particular letter constitutes notice depends upon its specific content. *Beesley's Point Sea–Doo, Inc.*, 956 F.Supp. at 541.

## III

### Summary Judgment Principles

The principles to be applied by this Court in considering a motion for sum-

mary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Phoenix Sav. & Loan, Inc. v. Aetna Cas. Co.*, 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit Court of Appeals summarized the principles applicable under Rule 56 as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir.1967).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick*, 736 F.2d at 958. This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger*

*v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985)).

Petitioners have requested that this Court suspend any decision on claimants' pending motion for summary judgment until after there has been a trial on the issues of liability and damages. This request will be denied. The claimants' Rule 56 motion is before the Court and has been fully briefed. The claimants are entitled to a ruling on their motion before a trial is held on other issues in the case.

Applying summary judgment principles pertaining to Rule 56 to the facts of record here, this Court has concluded that the claimants' pending motion for summary judgment must be denied.

IV

*Discussion*

■ Relying on letters written to claimant Weaver by petitioners' insurance company, the claimants first contend that petitioners had notice of their claims well before April 22, 2001. These letters from Windsor Mount Joy Mutual Insurance Company and from Walter Nixon Group, Inc., petitioners' insurers, are dated August 12, 1999 and October 27, 1999 and were sent to Weaver himself. They indicate that petitioners and their insurance agents knew that Weaver had sustained an injury on board the Vessel on July 30, 1999 and that he had retained counsel. By way of these letters, petitioners' insurers were seeking medical records and bills so as to determine the extent of Weaver's injuries. According to claimants, petitioners were on notice of Weaver's claim as early as August of 1999 and therefore the complaint which they filed on October 27,

2001 is untimely under the six month limitations period.

However, the fact that a petitioner was aware of an incident and the existence of a formal claim is not conclusive under § 185. *Okeanos*, 704 F.Supp. at 414. There must under § 185 be "written notice" of the claim itself, and the notice must be "given to or filed with" the owner of the vessel. Although there must be notice of the claim and although it must be in writing, the writing in question need not be in any particular form. *Okeanos*, 704 F.Supp. at 414 (citation omitted). Nevertheless, the written notice must indicate that there is a reasonable possibility that the claims would exceed the value of the ship. *Van Le v. Five Fathoms, Inc.*, 792 F.Supp. 372, 374 (D.N.J.1992).

In determining here if claimants have demonstrated that they are entitled to summary judgment as a matter of law, the Court therefore must examine letters written by claimants' attorney to determine if they conclusively show that petitioners received proper written notice of their claims more than six months prior to their filing of the October 27, 2001 complaint. Claimants rely on three pieces of correspondence which were sent by claimants' attorney to petitioners' insurers, only two of which are dated prior to April 27, 2001 and are therefore relevant.

A November 18, 1999 letter was sent by claimants' attorney to Michael Walters of the Walters Nixon Group, Inc., the insurance adjusters. It states:

Dear Mike:

Thank you for you letter of October 27, 1999.

Mr. Weaver remains under active treatment. As we accumulate medical records, we will forward them to you.

At the present time, we respectfully decline your gracious offer to informally interview Mr. Weaver.

A June 5, 2000 letter is also from claimants' attorney to Michael Walters. It states:

Please find enclosed a copy of an executed authorization for release of medical information and records. As per our agreement, please provide us with full copies of all information you gather using this authorization.

Claimants' attorney has submitted an affidavit stating that claimants gave notice of their claim to petitioners' insurance company in July of 1999. However, the letter relied upon is dated June 13, 2001. It is from claimants' attorney to Michael Walters, is three pages in length, and discusses the incident and the claim being asserted in some detail. The letter of June 13, 2001 clearly constitutes proper written notice under § 185. However, because this letter was received less than six months prior to petitioners' suit, it does not provide support for claimants' pending motion for summary judgment.

After reviewing the November 18, 1999 letter and the June 5, 2000 letter sent by claimants' attorney to petitioners' insurance adjuster, this Court cannot conclude as a matter of law that either one provided petitioners with adequate notice which would start the running of the limitations period. Neither letter: (1) informs the vessel owner of claimants' "demand of a right or supposed right," (2) blames the vessel owner "for any damage or loss," or (3) "calls upon the vessel owner for something due claimant." *Loyd W. Richardson*, 850 F.Supp. at 557. Nor do the letters indicate whether the claims might be expected to exceed the value of the ship. *Van Le*, 792 F.Supp. at 374. Claimants place heavy reliance on *In re Complaint and Petition of Big Deal, Inc.*, 765 F.Supp. 277, 277–79 (D.Md.1991), *aff'd, unpublished table opinion*, 958 F.2d 367 (4th Cir.1992). In that case, however, the let-

ter in question stated that the "[c]laim is hereby made for payment of lost wages, unearned wages, maintenance and cure, and damages." *Id.* at 277. No such language is included in the two letters relied upon by the claimants in this case.

The rationale for requiring that a claimant strictly comply with § 185 has been cogently explained in a number of cases. The filing of a limitations action is burdensome upon the vessel owner who is required, together with such a filing, to post security in an amount equivalent to the value of the vessel. *Billiot v. Dolphin Services, Inc.*, 225 F.3d 515, 518 (5th Cir. 2000); *In re Morania Barge No. 190, Inc.*, 690 F.2d at 34. In his concurring opinion in *Spooner & Sons*, 253 F.2d at 586–587, Judge Learned Hand wrote that:

> "[t]he purpose of putting a time limit upon the owner's privilege of limiting his liability is to advise the claimant in season, so that he may avoid preparing further to press claims that may have small value, or perhaps none whatever," and that because the owner, in order to exercise that privilege, "must either file security for the full value of his ship, or surrender her to a trustee," the owner ought to have the right "to make the claimant define his position" and that "[i]f the claimant refuses to do so, it may be that the [six months] does not begin to run until [the claimant] does."

This very same language was cited with approval in Judge Kaufman's opinion in *Big Deal,* 765 F.Supp. at 279.

Knowledge that a prospective claimant has engaged counsel and is investigating medical expenses incurred does not amount to quantification of the claim. Only when by written notice a petitioner is informed that the damages claimed might be expected to exceed the value of the vessel should the petitioner be required to assume the burden and expense of complying with the six months statutory period by timely filing a limitation of liability action.

Because the two letters of November 18, 1999 and June 5, 2000 were the only written communications from claimants' attorney to petitioners' agents sent prior to April 27, 2001, this Court cannot conclude as a matter of law that petitioners received proper notice under § 185 of the claims being now asserted more than six months prior to filing their complaint. Therefore, claimants' motion for summary judgment must be denied.

## V

### *Conclusion*

For all the reasons stated, it is this _____ day of March, 2002 by the United States District Court for the District of Maryland,

ORDERED that the motion for summary judgment of claimants Steven T. Weaver and Lori Weaver is hereby denied.