**DOXSEE SEA CLAM CO., INC.,**
**Plaintiff–Appellant,**

v.

**Christian BROWN, Defendant–Appellee.**

No. 422, Docket 93–7525.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1993.

Decided Jan. 3, 1994.

John Ingram, New York City (Lisa A. Scognamillo, Burlingham Underwood, New York City, of counsel) for plaintiff-appellant.

Paul C. Matthews, New York City (L. Kevin Sheridan, Smithtown, NY, of counsel) for defendant-appellee.

Before: MINER and ALTIMARI, Circuit Judges, and ELFVIN, District Judge.*

MINER, Circuit Judge:

Plaintiff-appellant Doxsee Sea Clam Co., Inc. ("Doxsee") appeals from an order entered in the United States District Court for the Southern District of New York (Sand, J.), denying Doxsee's motion to strike the affirmative defense of untimeliness interposed by defendant-appellee Christian Brown. The defense was pleaded in Brown's answer to Doxsee's petition, filed pursuant to 46 U.S.C. app. §§ 183–186 (1988), for exoneration from, or limitation of, liability for injuries allegedly suffered by Brown aboard a Doxsee-owned fishing vessel. The order also dismissed the petition as time-barred under 46 U.S.C. app. § 185. For the reasons that follow, we affirm.

## BACKGROUND

On November 19, 1989, Brown was injured aboard Doxsee's vessel F/V DAY STAR, a clam dredger on which he was employed as a deckhand. Brown sustained a laceration on his forehead as a result of being struck by a removable metal "bin board" used to prevent clams from falling off a conveyor on the vessel. Brown was treated for his injury at a local hospital and returned to work the following day.

Doxsee's President, Robert L. Doxsee, Jr., immediately was made aware of Brown's injury by the captain of the DAY STAR, who also informed Mr. Doxsee of the specific details of the accident. Mr. Doxsee then called his insurance representative at Mariner's Insurance Agency ("Mariner's") in accordance with his regular practice. International Marine Underwriters ("IMU"), Doxsee's insurance carrier, thereafter retained Maritime Adjusters, Inc. ("Adjusters") to investigate Brown's claim.

On January 17, 1990, Brown developed lower back pain while working aboard the DAY STAR and was examined by an orthopedic specialist. On January 29, Brown returned to the specialist and was admitted later that same day to South Nassau Communities Hospital, where he remained until February 11. He was transferred to St. Francis Hospital on February 11 for tricuspid heart valve surgery. Brown was suffering from a staph infection and bacterial endocarditis caused by the staph infection. The St. Francis Hospital history sheet records the laceration on Brown's forehead as a possible source of infection.

After Brown had been hospitalized for about two weeks, his father phoned Mr. Doxsee and inquired whether worker's compensation would be paid to his son. Mr. Doxsee referred Brown's father to Mariner's. A subsequent inquiry from South Nassau Communities Hospital concerning a bill for services rendered in connection with Brown's treatment likewise was referred to Mariner's. While in the hospital, Brown retained an attorney, Paul Berg, whose inquiries Mr. Doxsee also directed to Mariner's. Thereafter, by letter dated March 6, 1990, Frank Sweeney, a claims adjuster from Adjusters, wrote to Berg:

Dear Attorney Berg:

* Honorable John T. Elfvin of the United States District Court for the Western District of New York, sitting by designation.

Enclosed please find a medical authorization form for Mr. Brown to sign and return with a complete list of all treating physicians, hospitals, etc. so that I may obtain a medical history on what is going on.

The original problem as reported to this office was a slight groin pull from pushing a clam cage that, two weeks later, escalated into heart surgery, etc.

With the enclosed signed, I should be able to get the information necessary to properly review the file and attempt to determine what underwriters are going to do.

If you have any questions, do not hesitate to call.

Sincerely,

s/Frank A. Sweeney

Maritime Claims Adjuster

Brown was discharged from the hospital on April 11, 1990 following open heart surgery involving the removal of a portion of a heart valve.

On April 25, 1990, Berg wrote to Adjusters, referencing "Your File 6–90F" and "Christian Brown," the same file number and "Claimant" referenced in Sweeney's letter of March 6, 1990. Following these references, Berg's letter stated:

Dear Sirs[:]

Please be advised that this firm represents Mr. Christen [sic] in this matter of his alleged accident aboard the ship Day Star, owened [sic] and operated by Doxee [sic] Sea Clamb [sic] Co., Inc.

Sweeney admits receiving this letter.

In an Affidavit in Opposition to Doxsee's motion to strike the affirmative defense of time-bar submitted by Paul C. Matthews, Brown's present attorney, Matthews stated that Berg and Sweeney "remained in contact with each other" and that Sweeney made arrangements for a representative "from Mariner's to meet with Berg to inspect the DAY STAR, and particularly the bin board involved in the accident of November 19, 1989." The inspection aboard the DAY STAR took place in May of 1990.

On May 29, 1991, Matthews wrote to Sweeney in a letter referencing "Christian Brown v. Doxsee Sea Clam Company." Sweeney admits that he received the letter. Matthews began the letter as follows:

Dear Mr. Sweeney:

Please be advised that I have been retained by Christian Brown to represent him in a claim against your assured, Doxsee Sea Clam Company.

Matthews went on to state that, pursuant to the ship owner's maintenance and cure obligations, Doxsee should be paying Brown's medical and hospital expenses, as well as maintenance for the time when Brown was not hospitalized. Matthews listed the hospital bills that were in his file, totalling over $110,000, and demanded payment for all outstanding bills.

The first notice sent directly to Doxsee was a letter dated May 18, 1992 from Matthews that was received on May 20. In the letter, Matthews advised Doxsee that he represented Brown, who had become ill as a result of contaminated lacerations he sustained while aboard the DAY STAR in December of 1989.[1] Matthews indicated that he had contacted Adjusters in May of 1991 requesting maintenance and cure, which had yet to be paid. He warned that, unless maintenance and cure were paid immediately, "it [was his] intention to commence suit on [Brown's] behalf not only for maintenance and cure, but also for damages under the Jones Act and the General Maritime Law." Subsequently, on June 18, 1992, Brown commenced a personal injury action in Supreme Court, Bronx County, seeking $21,000,000 in damages for injuries allegedly sustained while he was a deckhand aboard the DAY STAR.

On November 17, 1992, Doxsee commenced the proceeding giving rise to this appeal. By the proceeding, Doxsee seeks exoneration from, or limitation of, liability, pursuant to 46 U.S.C. app. § 185 and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. Section 185 provides that a vessel owner may limit its liability on a substantive claim against it to the value of its interest in the vessel and pending freight. Here, the verified complaint sought

---

1. This date was erroneous. Brown sustained the lacerations in November of 1989.

$21,000,000 in damages; Doxsee's interest in the DAY STAR was approximately $350,000. In his answer, served on or about January 4, 1993, Brown asserted that the action was time barred because more than six months had passed since Doxsee received notice of Brown's claim.

Doxsee moved to strike this affirmative defense on January 21, 1993. In affidavits submitted to the district court in support of the motion, both Mr. Doxsee and Sweeney stated that, although Adjusters received notice of claim, it never was authorized by Doxsee or anyone else to accept notice on Doxsee's behalf. The district court denied the motion, dismissed the action as untimely and vacated the stay of Brown's state court action. The district court determined that Adjusters had apparent authority to accept notice of claim on behalf of Doxsee and that notice of claim, therefore, was received by Doxsee upon Sweeney's receipt of the May 29, 1991 letter from Matthews. The district court found apparent authority based on Sweeney's letter of March 6, 1990 notifying Brown that Adjusters had opened a file on the claim and based on Mr. Doxsee's referral of Brown's father and Berg to Adjusters. The district court, disagreeing with Doxsee's argument that the extent of the damages was not apparent from the injuries suffered, noted that the Sweeney letter acknowledged that Brown had undergone heart surgery. The district court also observed that the itemization of medical bills in the Matthews letter of May 29, 1991 indicated the magnitude of the claim. Finally, the district court rejected Doxsee's argument that the letters sent by Berg and Matthews referred only to claims for maintenance and cure, which are not subject to the time limitation at issue here. The district court found that, while neither letter referred to damages other than for maintenance and cure, the letters did not expressly limit Brown's claim to those remedies; moreover, the ongoing investigation of the incident was inconsistent with such a position because claims for maintenance and cure essentially are no-fault claims.

## DISCUSSION

The question concerning the timeliness of Doxsee's petition relates only to the April 25, 1990 letter from Berg to Sweeney and the May 29, 1991 letter from Matthews to Sweeney. The parties do not dispute that Doxsee's filing of the petition in this action was timely with regard to the letter dated May 18, 1992 from Matthews to Doxsee, but was tardy with regard to both the April, 1990 and May, 1991 letters.

Our analysis here proceeds in two parts. First, we must determine whether receipt of the letters by Sweeney constitutes written notice to Doxsee as required by 46 U.S.C. app. § 185. Second, if Doxsee received notice, we must examine whether it was a notice of claim sufficient to satisfy section 185.

*1. Adjuster's Authority to Receive Notice of Claim*

Section 185, which governs a vessel owner's petition for limitation of liability, provides in relevant part: "The vessel owner, within six months after a claimant *shall have given to or filed with such owner* written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability...." 46 U.S.C. app. § 185 (emphasis added). Here, the letters that Brown argues comprised the notice of claim were sent not to Doxsee, but to Sweeney, the marine claims adjuster employed by Adjusters. Therefore, if Brown is to prevail, it must be determined that Adjusters had authority to receive notice of claim on behalf of Doxsee. It is settled that a notice of claim may be received by an agent of the vessel owner. *See Diamond v. Beutel,* 247 F.2d 604, 607 (5th Cir.1957). Both Sweeney and Mr. Doxsee gave statements that neither Adjusters nor Sweeney had authority to accept notice of claim on behalf of Doxsee. However, we agree with the district court's determination that Sweeney and Adjusters had apparent authority to receive Brown's notice of claim.

An agent has apparent authority when conduct by the principal leads a third party to believe that the agent has authorization to act on behalf of the principal. *99 Commercial St., Inc. v. Goldberg,* 811 F.Supp. 900, 906 (S.D.N.Y.1993); *Lawyer's*

*Fund for Client Protection v. Manufacturer's Hanover Trust Co.*, 153 Misc.2d 360, 581 N.Y.S.2d 133, 134 (Sup.Ct.1992). Apparent authority is dependent on verbal or other acts by the principal, of which the third party is aware, which reasonably give the appearance that the agent has authority to conduct a particular transaction. *Greene v. Hellman*, 51 N.Y.2d 197, 433 N.Y.S.2d 75, 80, 412 N.E.2d 1301, 1306–07 (1980). If a third party reasonably relies upon such acts, the principal will be bound by the conduct of his agent. *See Legal Aid Soc'y v. Economic Opportunity Comm'n, Inc.*, 521 N.Y.S.2d 833, 835 (App.Div. 3d Dep't 1987).

Here, Mr. Doxsee referred inquiries by both Brown's father and Berg to Mariner's, Doxsee's insurance agency. Apparently, the agency referred the inquiries to the underwriter, IMU, which then retained Adjusters. If Adjusters was not Doxsee's agent, it was a sub-agent of the entity designated by Doxsee to handle matters relating to Brown's injury. *See Restatement (Second) of Agency* § 80 (1958) (authorization of sub-agency inferred if agent is business organization or appointment of sub-agent for performance is usual and principal has reason to know that agent employs sub-agents). Here, it is apparent that Mr. Doxsee would have reason to know that a claims adjuster would be employed by IMU to investigate Brown's injuries. In either event, Adjusters, via Sweeney, was holding itself out and acting as an agent of Doxsee, and Mr. Doxsee's statements clothed Adjusters with apparent authority to act in this capacity. This conclusion is supported by the correspondence commenced by Sweeney in March of 1990 and by the inspection of the DAY STAR by Mariners in May of 1990, events of which Mr. Doxsee was aware and in which he apparently acquiesced. Therefore, since Adjusters had apparent authority to receive notice of claim by Brown, and Sweeney acknowledges receipt of the relevant letters, Doxsee's argument that it did not receive written notice prior to May of 1992 cannot succeed. We now turn to the question of whether the letters constituted sufficient notice of claim.

## 2. Sufficiency of Notice

Section 185 does not indicate what type of writing or form is necessary to satisfy its requirement of written notice of claim. Nevertheless, it is settled that letters sent by claimants to vessel owners may constitute notice of claim. *See, e.g., In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir.), *cert. dismissed*, 358 U.S. 30, 79 S.Ct. 9, 3 L.Ed.2d 48 (1958); *In re Spearin, Preston & Burrows, Inc. ("Lavinia D.")*, 190 F.2d 684, 686 (2d Cir.1951); *Complaint of Okeanos Ocean Research Found., Inc.*, 704 F.Supp. 412, 414 (S.D.N.Y.1989). Doxsee argues that the letters sent to Sweeney are so lacking in detail that they fail to give sufficient notice. However, this Court has not required exacting specificity in a notice of claim to a vessel owner. Rather, we have employed a broad and flexible standard of review—reading letters of notice in their entirety and considering their "whole tenor"— when determining if sufficient notice was given. *See Spooner*, 253 F.2d at 586. Notice will be sufficient if it informs the vessel owner of an actual or potential claim, *id.*, which may exceed the value of the vessel, *In re Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir.1982), and is subject to limitation, *Lavinia D.*, 190 F.2d at 686. Here, we conclude that Matthews' letter of May 29, 1991 to Sweeney was notice of claim sufficient to trigger the six-month limitations period of section 185.

Matthews' letter made specific reference to "a claim against" Doxsee by Brown. It specifically referred to Matthews having been "retained" to represent Brown against Doxsee and the "Re:" line of the letter was styled in the manner of an actual, present controversy: "Christian Brown v. Doxsee Sea Clam Company." Moreover, the itemization of medical bills in excess of $110,000 clearly was sufficient to inform Doxsee of the reasonable possibility that a substantial damages claim for personal injury in excess of $350,000 would be brought by Brown. *See Spooner*, 253 F.2d at 586 (letter informing petitioner that claimant "may" press claim constituted notice of claim). Such a claim for damages would be subject to the limitation imposed by section 185. Even if we were to

conclude that the letter was ambiguous as to the amount that would be sought by Brown, the burden to seek clarification falls upon Doxsee. *See id.* at 586–87 (Hand, J., concurring) ("[I]t is indeed reasonable to require [petitioner] to make the claimant define his position.... That ought to throw upon the owner the risk that the claimant would in fact assert the claim which he spoke of only as possible."). Here, Doxsee did not respond to Matthews' letter until it filed its petition for limitation or exoneration in November of 1992—eighteen months after Sweeney's receipt of the letter. Upon reviewing Matthews' letter of May 29, 1991 to Sweeney, it is apparent from its tenor that its import was to inform Doxsee that Brown was considering a claim that exceeded the value of the DAY STAR and, thus, we conclude that it provided sufficient notice of claim as required by section 185.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby affirmed.