83 F.3d 821
 In the Matter of the Complaint of McCARTHY BROTHERS
COMPANY/CLARK BRIDGE, as Owner Pro Hac Vice of
Barge No. AEB1 for Exoneration from or
Limitation of Liability,
Petitioner-Appellant.
 No. 95-2880.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 1, 1996.
Decided May 3, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied June 3, 1996.
 
 Andrew Rothschild (argued), Lewis, Rice & Fingersh, St. Louis, MO, for McCarthy Brothers Company/Clark Bridge.
 Roy C. Dripps, Gail Renshaw (argued), Lakin Law Firm, Wood River, IL, for Gary Campbell and Commercial Union Ins. Co.
 Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 This case involves a conflict between the Limitation of Liability Act, 46 U.S.C.App. §§ 181 et seq. ("Limitation Act"), which gives shipowners a right to seek limitation of liability in federal court for maritime injuries, and the "saving to suitors" clause of 28 U.S.C. § 1333(1), which gives claimants a right to seek common law remedies outside of the federal admiralty forum. Claimant Gary Campbell brought a state court action seeking damages for injuries sustained on a vessel chartered by McCarthy Brothers Company. McCarthy then sought to limit its liability in federal district court. The district court entered an order restraining further litigation in state court and then proceeded to resolve all issues relating to McCarthy's liability and the availability of limitation under the Limitation Act. We now hold that the district court should have abstained on the liability issue, permitting Campbell to proceed in state court under the "saving to suitors" clause, but retained jurisdiction on the limitation questions pending the outcome of the state proceeding.I.
 
 
 2
 Campbell was employed by McCarthy as an ironworker on the construction of the Clark Bridge over the Mississippi River near Alton, Illinois. His job was to pre-tie iron rebar for installation in the river bed, which consisted of fastening iron rods together with wire. Campbell worked on Barge No. AEB1, which McCarthy had chartered for the project. The parties dispute whether he was a maritime worker. The barge remained moored most of the time and served as a work deck. However, when the barge was towed to the bridge site for rebar installation, Campbell and other iron workers were sometimes present. Maritime duties on the barge, such as handling lines, were performed by a deckhand.
 
 
 3
 The accident that produced this litigation occurred on October 29, 1991, approximately six weeks after Campbell commenced working for McCarthy. Work on the barge produced a considerable amount of debris, and the deckhand was responsible for clearing all waste from walkways and work areas. When Campbell returned from retrieving additional supplies, his attention was momentarily diverted and he stepped on a piece of scrap wood, causing him to fall. The parties dispute both the specifics of the fall and the district court's finding that the deckhand was exclusively responsible for clearing debris. Campbell sustained two herniated discs that required surgery.
 
 
 4
 In 1992, Campbell filed a worker's compensation claim with the Illinois Industrial Commission, which McCarthy's compensation carrier, Commercial Union Insurance Company ("Commercial Union"), began paying. Then on January 28, 1993, McCarthy received the following letter from Campbell's attorney:
 
 NOTICE OF REPRESENTATION AND ATTORNEY'S LIEN
 
 5
 You are hereby notified that we have been retained to represent Gary Campbell for injuries he sustained on or about October 29, 1991, for which he claims you are responsible.
 
 
 6
 Please be advised that we have a contract with our client whereby we are to receive thirty-three and one third percent (33 1/3 %) of any sums of money paid to him as a result of the injuries and by this letter we are putting you on notice of our attorney's lien.
 
 
 7
 Any medical authorization in your possession given to you by our client is hereby revoked at the request of our client and you are instructed to take no further action which would involve the use of any prior authorization.
 
 
 8
 Please forward this letter immediately to your insurance carrier so they may contact us regarding this claim.
 
 
 9
 On August 31, 1993--more than six months after this letter was sent to McCarthy--Campbell filed a complaint in Illinois state court alleging Jones Act negligence, unseaworthiness, and maintenance and cure. Pursuant to the Limitation Act and on January 27, 1994, McCarthy filed an action in the district court for exoneration or limitation of liability ("limitation action"). On the same day, the district court entered an order restraining further prosecution of the state court action.
 
 
 10
 The limitation action proceeded in the district court in a rather confused manner. After filing a claim for damages and an answer to McCarthy's district court complaint, Campbell moved to dissolve the federal restraining order so that he could proceed in state court. The district court denied the motion, in part because Campbell failed to make adequate stipulations to protect McCarthy's right to limit liability in the state court proceeding. Commercial Union also filed a claim for damages in the limitation action, claiming the right of recovery from Campbell of any damages he might receive from McCarthy to the extent of payments already made by Commercial Union to Campbell. After completing discovery, both Campbell and McCarthy moved for summary judgment--Campbell on the basis that McCarthy filed its district court petition more than six months after receiving the attorney's lien letter of January 28, 1993, in violation of 46 U.S.C.App. § 185, and McCarthy on the basis that Campbell was not a Jones Act seaman. Thereafter on October 21, 1994, the case was reassigned from Judge Stiehl to Judge Riley upon his appointment to the federal bench. He denied both motions for summary judgment and set the case for bench trial on March 13, 1995. In denying Campbell's motion for summary judgment, Judge Riley stated that the timeliness of McCarthy's petition was not ripe for discussion since the court would not have to reach the issue if Campbell lost on the merits.
 
 
 11
 After trial, the court issued its memorandum and order. Judge Riley concluded that the January 28, 1993, letter constituted a written notice of claim sufficient to trigger the six-month limitation period set forth in 46 U.S.C.App. § 185, and that McCarthy's limitation action was therefore filed too late. He thus dismissed McCarthy's complaint and "remanded" the case to state court for a determination "of the amount of damages consistent with the terms of this Order." By the "terms of this Order," Judge Riley intended that the state court be bound by five additional conclusions of law in his memorandum and order, that: (1) Campbell was a Jones Act seaman; (2) McCarthy's negligence and the unseaworthiness of Barge No. AEB1 caused Campbell's injuries; (3) Campbell was not contributorily negligent; (4) McCarthy had sufficient privity and knowledge such that it was not entitled to limitation of liability; and (5) McCarthy had failed to prove the value of the limitation fund, which is the value of the vessel and its cargo.
 
 
 12
 McCarthy appeals the dismissal of its complaint on timeliness grounds as well as each of the district court's additional findings. Neither party argues on appeal that the district court improperly denied Campbell's motion to dissolve the restraining order against the state court proceeding. Contrary to what either party likely expected on appeal, we find that the district court erred in not permitting Campbell to proceed in state court. Only a review of the arcane jurisdictional rules for limitation actions will illustrate why the proceedings in the district court were confused and why this Court ought to raise the issue of abstention sua sponte and permit Campbell to proceed in state court, even though the case was fully tried in district court.
 
 II.
 
 13
 There exists in admiralty law an inherent conflict between the right of claimants to seek common-law remedies before a jury, typically in state court, and the right of shipowners to limit their liability to claimants in federal court. The Limitation Act vests in federal courts exclusive jurisdiction, pursuant to their admiralty jurisdiction under 28 U.S.C. § 1333(1), to decide whether a shipowner's liability should be limited in certain circumstances. We have previously summarized the history and purposes of the Limitation Act, Joyce v. Joyce, 975 F.2d 379, 383-384 (7th Cir.1992), but suffice it to say that the Act encourages ship-building and investment by limiting a shipowner's liability to the amount of his interest in the ship. Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 20 L.Ed. 585. When the federal court exercises its exclusive jurisdiction, it must necessarily enjoin proceedings in state court. But this result is in direct conflict with the "saving to suitors" clause of 28 U.S.C. § 1333(1), which excepts from the district courts' exclusive jurisdiction over admiralty matters the right of suitors to seek "all other remedies to which they are otherwise entitled." The conflict is significant. Claimants have no right to a jury in admiralty actions, Waring v. Clarke, 46 U.S. (5 How.) 441, 458-60, 12 L.Ed. 226, and thus lose their right to pursue common-law remedies before a jury when forced into admiralty court under the Limitation Act.
 
 
 14
 The typical scenario is as follows. Claimant files a complaint in state court. The shipowner then petitions the district court for limitation of liability pursuant to the Limitation Act, which must be done "within six months after a claimant shall have given to or filed with such owner written notice of claim...." 46 U.S.C.App. § 185. Once properly filed, the district court retains exclusive jurisdiction over the matter and all claims against the shipowner must cease. 46 U.S.C.App. § 185; Metropolitan Redwood Lumber Co. v. Doe, 223 U.S. 365, 32 S.Ct. 275, 56 L.Ed. 473. If the shipowner so requests, the district court may enjoin other proceedings against it. Fed.R.Civ.P. Supp. R. F(3). The district court is to notify all potential claimants to file their claims within a specified period of time. Fed.R.Civ.P. Supp.R. F(4). The court then tries the case and makes a determination as to all matters on the merits. In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 (2d Cir.1988).
 
 
 15
 Because of the inherent conflict between the "saving to suitors" clause of 28 U.S.C. § 1333(1) and exclusive federal jurisdiction for limitation actions, a shipowner's guarantee of a federal admiralty forum is tentative at best. Failure to meet statutory prerequisites is one way the shipowner may lose the guarantee. Where the shipowner fails to meet certain prerequisites for the limitation action, the claimant's original choice of a state forum will return to the forefront. For example, Section 185 of the Limitation Act lists two requirements: filing within the six-month period and offering security to the court in the amount of the claimed limitation fund. State court proceedings must cease under Section 185 only when these requirements are met. 46 U.S.C.App. § 185; In re Complaint of Tom-Mac, Inc., 76 F.3d 678 (5th Cir.1996). In addition, the Limitation Act provides that the liability of a shipowner for any loss or damage "done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.App. § 183(a). The shipowner has the ultimate burden of proving lack of privity or knowledge in federal court. In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1303 (7th Cir.1992). Where the shipowner fails to establish lack of privity or knowledge, the federal court lacks the power under the Limitation Act to limit his liability, and the federal court must relinquish exclusive jurisdiction and allow the claimant to proceed in state court. Joyce, 975 F.2d at 385.[1]
 
 
 16
 A shipowner might also lose the guarantee of a federal admiralty forum even where he meets all of the statutory prerequisites. The conflict created by the "saving to suitors" clause has generated a doctrine of abstention, first enunciated in Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520. In Langnes, the Supreme Court was presented with the typical scenario--claimant sued in state court and shipowner later brought a limitation action in federal court. The Court first acknowledged the power of the state court to entertain a shipowner's limitation claim and afford relief under the Limitation Act. Id. at 540, 51 S.Ct. at 247. However, the shipowner chose federal court, which he had a right to do. Given the competence of both courts to fully resolve the matter, "the question which arose was not one of jurisdiction, but ... was whether as a matter of discretion that jurisdiction should be exercised [by the federal court] to dispose of the cause." Id. at 541, 51 S.Ct. at 247 (emphasis added). The Court resolved the conflict in favor of federal court abstention:
 
 
 17
 The difference in the effect of adopting one or the other of the two alternatives presented to the district court was obvious. To retain the cause would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a commonlaw remedy; to remit the cause to the state court would be to preserve the rights of both parties. The mere statement of these diverse results is sufficient to demonstrate the justice of the latter course; and we do not doubt that, in the exercise of a sound discretion, the district court, following that course, should have granted respondent's motion to dissolve the restraining order so as to permit the cause to proceed in the state court, retaining, as a matter of precaution, the petition for a limitation of liability to be dealt with in the possible ... event that the right of the petitioner to a limited liability might be brought into question in the state court.... The failure to do this, in our opinion, constituted an abuse of discretion subject to the correcting power of the appellate court below and of this court.
 
 
 18
 Id. at 541-542, 51 S.Ct. at 247. Abstention in such circumstances--with some refinements outlined below--is still the law. See, e.g., In Matter of Complaint of Port Arthur Towing Co., 42 F.3d 312, 316 (5th Cir.1995), certiorari denied, --- U.S. ----, 116 S.Ct. 87, 133 L.Ed.2d 44; Gorman v. Cerasia, 2 F.3d 519, 524-525 (3d Cir.1993); In re Complaint of Midland Enters., Inc., 886 F.2d 812, 814 (6th Cir.1989); Dammers, 836 F.2d at 755; Jefferson Barracks Marine Serv., Inc. v. Casey, 763 F.2d 1007, 1009-1010 (8th Cir.1985).
 
 
 19
 Thus where the case falls within the Langnes rule of abstention, the district court permits proceedings in state court to go forward on the question of liability and retains jurisdiction over any question that might arise as to the shipowner's right to limit his liability. Ex parte Green, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212. If the shipowner either (1) wins in the state court or (2) loses, but only in an amount less than the value of his ship and its cargo, then the need for further proceedings in federal court is obviated. If the shipowner is found liable for more than the value of his ship and its cargo in the state action, further proceedings in the federal limitation action may be necessary, but only where the claimant contests the limitation.
 
 
 20
 In summary, the conflict between the "saving to suitors" clause and exclusive federal court jurisdiction over admiralty claims has generated complex rules governing both where and when the parties' claims should be resolved. The shipowner's right to a federal admiralty forum is tentative: the claimant's preference for a different forum will prevail where the shipowner fails to meet certain statutory prerequisites and where the situation is appropriate under established case law for federal court abstention. When the federal court abstains, it retains jurisdiction over the limitation of liability question pending resolution of the liability issues.
 
 III.
 
 21
 Given this understanding of limitation actions, we find no precedent for the district court's disposition of McCarthy's limitation action. It is unnecessary to reach the merits of the court's final memorandum and order to so conclude. Assuming for the moment that the district court properly denied Campbell's motion to dissolve the restraining order, the court made two other findings, either one of which required under established law that Campbell be returned to state court. First, the court found that McCarthy's petition was not filed within the requisite six month period under 46 U.S.C.App. § 185. That should have ended the matter in federal court, because Section 185 states that other proceedings must cease only when the procedures of Section 185 are satisfied. See Tom-Mac, supra. Second, the district court concluded that McCarthy failed to demonstrate lack of privity or knowledge; under Joyce, supra, that also should have ended the matter in federal court. The court's further finding that McCarthy failed to prove the value of the vessel and its cargo may also have been an independent basis for sending the case back to state court, though the Supreme Court in dicta has suggested that shipowners should be given a second chance in federal court to value the limitation fund correctly. Black Diamond S.S. Corp. v. Robert Stewart & Sons, Ltd., 336 U.S. 386, 394-395, 69 S.Ct. 622, 626-27, 93 L.Ed. 754.
 
 
 22
 The district court simply disregarded Campbell's significant interest in a state forum under the "saving to suitors" clause. This is most clearly revealed in its rejection of Campbell's motion for summary judgment in which it declined to address the six-month limitation period, stating that it would not need to decide the issue if Campbell lost on the merits. The court ultimately found that McCarthy's petition was untimely, permitting Campbell to return to state court, but only after ruling on the merits of this case so as to bind the state court in its determination. The irony of it all, as will be seen, is that the district court should have abstained from the very beginning.
 
 
 23
 To dispose of this case properly, we must address three questions. First, the timeliness of McCarthy's petition under 46 U.S.C.App. § 185 is an issue preliminary to any disposition by this Court--both to the validity of the district court's additional findings if we were to review them or, if we find that abstention under Langnes is appropriate, to the ability of the district court to retain jurisdiction on the limitation of liability issue. Second, we address whether this is an appropriate case for raising the question of abstention on appeal, given the failure of the parties to do so and the fact that the case was fully tried in the district court. Finally, assuming an affirmative answer to the second inquiry, the question remains whether under Langnes the district court should have granted Campbell's motion to dissolve the restraining order.
 
 A.
 
 24
 As noted, Section 185 states that a shipowner must petition the district court for limitation of liability within six months after receiving "written notice of claim" from a claimant. 46 U.S.C.App. § 185. The Limitation Act does not define "written notice of claim" and cases interpreting the language are surprisingly scant. Although this Court has stated that the six-month period shall be strictly construed and that ambiguities shall be resolved against the shipowner, Ohio River Co. v. Carrillo, 754 F.2d 236, 238-239 (7th Cir.1985), we have never addressed what constitutes a written notice of claim sufficient to trigger the six-month period. The most authoritative case states that a letter sent to a shipowner by a claimant is sufficient to trigger the six-month period if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation. Doxsee Sea Clam Co. v. Brown, 13 F.3d 550, 554 (2d Cir.1994). As to the latter of these requirements, the written notice of claim must reveal a "reasonable possibility" that the claim made is one subject to limitation. Tom-Mac, 76 F.3d at 683.
 
 
 25
 The district court held that the January 28, 1993, attorney's lien letter to McCarthy constituted written notice of claim under Section 185. The court relied on language in the letter stating that Campbell suffered injuries "for which he claims you are responsible" and on a request in the letter that the claim be forwarded to McCarthy's insurance carrier. We hold that the letter was not a sufficient written notice of claim. First, in light of the fact that Campbell had already filed a worker's compensation claim, the letter failed to inform McCarthy of an actual or potential claim that is subject to limitation. McCarthy could have reasonably construed the letter as relating to the worker's compensation claim rather than some future claim for damages. The letter held sufficient by the Second Circuit in Doxsee was much more specific. Unlike the attorney's lien letter here, the Doxsee letter refers to a specific claim for which the attorney had been retained and the "Re:" line referenced a present controversy--"Christian Brown v. Doxsee Sea Clam Company." Also unlike the situation here, there was no existing claim in Doxsee that could have confused the intent of the letter. Even assuming the letter gave adequate notice of a claim subject to limitation, nothing indicates that the claim would exceed the value of the vessel. On the other hand, the correspondence in Doxsee itemized medical bills, indicating a reasonable possibility that the claims would exceed the value of the vessel. 13 F.3d at 554-555.
 
 
 26
 Our conclusion is bolstered by the purpose of the six-month limitation period in 46 U.S.C.App. § 185. Before the 1936 amendments to the Limitation Act, which added the six-month requirement, shipowners caused undue delay by waiting to file limitation actions until after a trial on the merits. The limitation period in Section 185 was added to avoid such delay. Jung Hyun Sook v. Great Pac. Shipping Co., 632 F.2d 100, 103 (9th Cir.1980). Thus in the typical case, the filing of a complaint serves as written notice of claim. See Tom-Mac, supra. Before a complaint is filed, delay on the part of the shipowner is harmless--certainly no judicial proceedings have begun--and the purpose of the six-month limitation is not yet actuated. The real danger in failing to hold claimants to a fairly high level of specificity in letters is that the claimant may nullify a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint.
 
 
 27
 We conclude that the January 28, 1993, letter was not a sufficient written notice of claim. Rather, McCarthy received written notice of claim on or about August 31, 1993, when Campbell filed a complaint in state court, and thus McCarthy timely filed its limitation action in district court on January 27, 1994.
 
 B.
 
 28
 The parties do not raise the issue of abstention on appeal. Not surprisingly, Campbell does not appeal the denial of his motion to dissolve the restraining order, preferring instead that we affirm on the merits (he won below). But the parties' failure to raise the issue is no impediment. An appellate court may raise abstention sua sponte: "[T]he court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it." Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983). Whether this is an appropriate case raises a number of questions. For example, we have refused to raise abstention sua sponte where the question whether to abstain required a fact-specific inquiry better left to the discretion of the district court. General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 708-709 (7th Cir.1991). This is not such a case, as the Court need only review the sufficiency of Campbell's stipulations in his motion to dissolve the district court's restraining order. See, e.g., Dammers, supra.
 
 
 29
 Another question is what weight should be given to the fact that the district court has already tried the case. We have stated that where a case has already gone to trial, the presumption should be against abstention. Mazanec v. North Judson-San Pierre Sch. Corp., 763 F.2d 845, 847 (7th Cir.1985). In Mazanec, this Court reversed a trial court's decision to abstain after the case had been tried. Although Mazanec did not present the question whether an appellate court should raise abstention sua sponte, the presumption against abstention after trial logically extends (and probably with greater force) to appellate cases. See, e.g., Serpas v. Schmidt, 827 F.2d 23, 27 n. 2 (7th Cir.1987), certiorari denied, 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234. The presumption has limited applicability, though, when the issue of abstention was, as here, raised prior to trial:
 
 
 30
 At least [the presumption against abstention holds] where neither party requested abstention before trial.... Maybe if one party had requested abstention before trial the fact that the judge denied the request and went on to try the case should not count against the request, for the party who made it might well have lacked any appellate remedy against the denial.
 
 
 31
 Mazanec, 763 F.2d at 847. Campbell did raise abstention prior to trial in his motion to dissolve the restraining order (and arguably again in his motion for summary judgment). Orders granting abstention are appealable as final judgments. Mazanec v. North Judson-San Pierre School Corp., 750 F.2d 625 (7th Cir.1984). Thus if the district court had granted Campbell's motion, McCarthy could have appealed immediately. Such was the case in Midland Enterprises, supra, and Gorman, supra. But the district court's denial of the motion, analogous to and having the same effect as an order denying a stay of federal court proceedings, was probably not immediately appealable by Campbell. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296; Mazanec, 763 F.2d at 847; but see Jefferson Barracks, supra (interlocutory appeal taken from issuance of stay, but basis for appellate jurisdiction not discussed). Given that the district court's determination was likely not appealable at the time by Campbell, thereby requiring a trial, we will not apply the Mazanec presumption against abstention. Accord Port Arthur, supra (reviewing stay of state court proceedings though matter was fully litigated in federal court).
 
 
 32
 A final and more significant concern about raising abstention sua sponte in this Court derives from our reasoning in Waldron v. McAtee, supra. In Waldron, we raised without prompting by the parties the doctrine of Pullman abstention, Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, by which federal courts abstain to avoid unnecessary constitutional determinations. We did so, at least in part, because a court abstaining in such circumstances "is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state ... legislatures." Waldron, 723 F.2d at 1351. By contrast, abstention in a limitation action is primarily justified to protect the rights of the claimant. Langnes, 282 U.S. at 541, 51 S.Ct. at 247. Federalism concerns are minimal at best, particularly since a claimant might obtain a jury trial in a federal civil proceeding (as opposed to an admiralty proceeding). Thus the important question here is whether Campbell still has rights that we ought to protect even though he did not raise abstention on appeal. The simple answer is, Campbell could lose in this Court if we reached the merits, or we could dispose of the case such that the district court would have to re-evaluate the merits. Based on Campbell's motion to dissolve the restraining order, it may be presumed that in either case he would prefer once again to be in state court.
 
 
 33
 More fundamentally, though, the only route by which we could conclude the matter in this Court, and thus avoid renewing Campbell's interest in abstention, would require us to examine the merits of the district court's five findings in its memorandum and order. And those findings, as we have said, were entirely gratuitous once it had dismissed McCarthy's petition as untimely filed. The situation here is no doubt exceptional due to the confused proceedings below. As in Waldron, this Court ought to be hesitant when raising abstention sua sponte where there is no systemic interest in doing so, such as federalism concerns.
 
 
 34
 That said, there is at least one systemic reason for reviewing the district court's refusal to lift the restraining order. As this case amply demonstrates, when a district court wrongly stays a proceeding and then finds in favor of the state court plaintiff on the merits, the decision to stay goes essentially unreviewed unless the appellate court raises abstention sua sponte. Doing so serves the systemic goal of warning against the exercise of jurisdiction over liability claims in future limitation actions that fall under Langnes. While there may or may not be value to the litigants in correcting an unappealed abuse of discretion (we believe there is value to Campbell), operation of the complicated admiralty jurisdictional rules will hopefully be facilitated in future cases.
 
 C.
 
 35
 This Court thus addresses the question whether the district court properly denied Campbell's motion to dissolve the restraining order. A federal court should abstain in two situations. First, the court should allow the case to proceed in state court if the value of the limitation fund, which represents the value of the vessel and its cargo, exceeds the aggregate of the total number of claims filed against the owner. Lake Tankers Corp. v. Henn, 354 U.S. 147, 152-154, 77 S.Ct. 1269, 1272-73, 1 L.Ed.2d 1246; Dammers, 836 F.2d at 755. That situation is not presented here. Second, where a single claimant brings an action against the shipowner seeking damages in excess of the value of the limitation fund, the district court should return the case to state court so long as the claimant makes stipulations adequate to protect the shipowner's rights under the Limitation Act. Ex Parte Green, 286 U.S. at 438-440, 52 S.Ct. at 603; Langnes, 282 U.S. at 540-544, 51 S.Ct. at 246-48. Specifically, the claimant must waive any claim of res judicata from the state court proceedings relevant to the issue of limited liability and concede the exclusive jurisdiction of the federal courts to determine all issues relating to limitation of liability. Port Arthur, 42 F.3d at 316; Gorman, 2 F.3d at 524; Dammers, 836 F.2d at 755 (all citing additional authority).
 
 
 36
 Campbell's motion to dissolve the restraining order fell squarely within the second category, which is the abstention rule that has its roots in Langnes. First, Campbell was the sole claimant. In its order denying the motion, the district court stated that there existed the possibility of additional claims for contribution or indemnity. However, the mere possibility of such claims is not enough to preclude state court adjudication, particularly where the nature of the accident belies the possibility of multiple claims and where no other claims were filed in the district court after it had notified potential claimants to do so pursuant to Fed.R.Civ.P. Supp. R. F(4). Langnes, 282 U.S. at 540, 51 S.Ct. at 246. Nothing in the record convinces us that additional claims will likely be filed in state court. Further, the claim for damages by Commercial Union against Campbell does not create a multiple claims situation. Only multiple claims against the shipowner necessitate federal court adjudication. See, e.g., Gorman, 2 F.3d at 525.
 
 
 37
 Second, Campbell provided adequate stipulations in his motion to dissolve the restraining order. It stated,
 
 
 38
 That claimant waives any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in state court; and stipulates to petitioner's right to litigate issues relating to the limitation in this limitation proceeding. (Motion to Dissolve para. 8).
 
 
 39
 The stipulations clearly waive res judicata and acknowledge the ultimate right of McCarthy to have limitation issues decided in federal court.
 
 
 40
 Finally, the district court correctly noted that Campbell's failure to expressly stipulate to the value of the limitation fund did not preclude it from dissolving the restraining order. Authority exists that such a stipulation must be made. See Dammers, 836 F.2d at 758-759; Jefferson Barracks, 763 F.2d at 1010 (both citing Grant Gilmore & Charles L. Black, The Law of Admiralty, at 871 (2d ed. 1975)). However, in light of the Supplemental Rules to the Federal Rules of Civil Procedure, the Sixth Circuit has noted that it is no longer necessary for a claimant to expressly stipulate to the value of the limitation fund. Midland Enterprises, 886 F.2d at 816-818. Rule F(7) of the Supplemental Rules provides a detailed procedure for a claimant to challenge the value placed on the vessel and its cargo by the shipowner. Thus where a claimant fails to challenge the amount of the limitation fund via Rule F(7) he is presumed to accept it. We agree with the Sixth Circuit that the claimant need only stipulate to the district court's authority to determine the value of the limitation fund, which Campbell has done. Campbell never contested the value of the limitation fund in the district court, except by way of a general denial in his answer to McCarthy's petition, and he certainly never made a Rule F(7) motion. For the foregoing reasons, the district court abused its discretion in denying Campbell's motion to dissolve the restraining order.
 
 IV.
 
 41
 In summary, the district court's memorandum and order are reversed insofar as they hold that Campbell's complaint was untimely filed under 46 U.S.C.App. § 185. The remainder of the memorandum and order is vacated and will therefore be of no authority in any future proceeding. The district court's order denying Campbell's motion to dissolve the restraining order is reversed. Pursuant to Langnes and Ex parte Green, supra, the district court shall retain jurisdiction over the right of McCarthy to a limited liability.
 
 
 42
 We pause briefly to address the apparent anomaly of vacating the district court's findings that relate to the question of whether McCarthy is entitled to a limitation of liability--in particular, the findings that McCarthy failed to prove lack of privity or knowledge under 46 U.S.C.App. § 183(a) and that McCarthy failed to prove the value of the vessel and its cargo. Depending on how the state court case proceeds on the question of liability, the district court may once again be called upon to determine these issues. We vacate the findings for two reasons. First, deciding the questions may be unnecessary. Admiralty procedures contemplate that the district court will permit the liability determination to be made prior to the limitation action; as Langnes states, the district court only retains jurisdiction for the possibility that the right of the shipowner to limit his liability comes into question. 282 U.S. at 541-542, 51 S.Ct. at 247.[2] Frequently, it will not--the shipowner may win the liability action, he may be found liable for an amount less than the value of the vessel and its cargo, or the claimant might not contest the shipowner's limitation right. Thus we decline to decide the limitation questions for the same reason that the district court should have done so.
 
 
 43
 Second, the course of proceedings in the district court reveals a degree of unreliability such that, at best, a remand would be in order on the limitation questions. The district court dismissed McCarthy's petition as untimely filed. Once it had done that, its other findings were gratuitous. Findings made by a court on matters that it has first admitted are not properly before the court smack of unreliability, and an appellate court that disagrees with the conclusion that the matters were not properly before the lower court ought to remand for a redetermination of findings made contingent on that conclusion. The law is replete with examples of the unreliability of unnecessary findings, such as the law of collateral estoppel and the principle that dicta is not binding in subsequent cases. Vacatur in this case is equivalent to a remand pending resolution of the liability issues in Campbell's state court action.
 
 
 44
 The case is therefore VACATED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs in this Court.
 
 
 
 [1]
 Joyce states that the dismissal was for lack of subject matter jurisdiction. 975 F.2d at 387. This contention is likely inaccurate--the Supreme Court, though in dicta, has stated that failure to demonstrate lack of privity or knowledge does not divest the district court of jurisdiction. Langnes v. Green, 282 U.S. 531, 534-535, 51 S.Ct. 243, 244-45, 75 L.Ed. 520. Just v. Chambers, 312 U.S. 383, 386, 61 S.Ct. 687, 690, 85 L.Ed. 903, again makes the point explicitly. The importance of our holding in Joyce and the analysis in Langnes and Just, however, is that the claimant's preference for a state forum returns to the forefront when the shipowner fails to meet one of the statutory prerequisites, and that is true whether or not we call it jurisdictional
 
 
 [2]
 We have uncovered only one case in which the district court was held to have properly determined the limitation of liability issues prior to resolution of the liability issues. See In re Double D Dredging Co., 467 F.2d 468 (5th Cir.1972). That case was unique, however, because the limitation action was consolidated with the claimant's Jones Act suit, both in federal court. In the typical case, the district court should await a determination of liability before proceeding with any remaining limitation of liability issues. See Ohio River Co. v. Carrillo, 754 F.2d 236 (7th Cir.1985)