[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12037

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 9, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-10021-CV-KMM

PARADISE DIVERS, INC.,
as Owner of the 30' Island hopper M/V Paradise
Diver IV bearing hull identification number
D929003, her engines, tackle, appurtenances, etc.,
Petitioner, in a cause for exoneration from or
limitation of liability,

Plaintiff-Appellant,

versus

KEVIN R. UPMAL,

Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 9, 2005)**

Before ANDERSON, PRYOR and HILL, Circuit Judges.

PER CURIAM:

The sole issue in this admiralty appeal is whether correspondence from Kevin Upmal, a seaman, to Paradise Divers, owner of the M/V Paradise Diver IV, in March and May of 2002 was sufficient written notice of a claim, under 46 App. U.S.C. section 185, to begin the running of the six-month limitation period during which a vessel owner must file an action for limitation of liability. If that correspondence triggered the running of the limitation period, then the action for limitation of liability filed by Paradise Divers on March 31, 2003, was untimely. Because the letters from Upmal to Paradise Divers, which referenced claims under the Jones Act and for unseaworthiness and maintenance and cure worth tens of thousands of dollars, were sufficient to begin the running of the limitation period, we affirm the dismissal of this limitation of liability action.

## I. BACKGROUND

On June 29, 2000, Upmal, first mate on the M/V Paradise Diver IV, was seriously injured while diving near Marathon Key, Florida, in the course of his employment, and was hospitalized. Paradise Divers refused payment of Upmal's medical bills in connection with his injury. In 2002, Upmal hired counsel Michael W. McLeod. Over the course of several months, McLeod corresponded with Michelle Niemeyer, counsel for Paradise Divers, concerning Upmal's injuries.

On March 18, 2002, McLeod sent a letter to Niemeyer that complained that

Upmal was entitled to maintenance and cure from Paradise Divers and Upmal owed providers of medical services tens of thousands of dollars:

> Please be advised that this office has been retained by Kevin Upmal relative to his on-the-job-injury occurring on or about June 6, 2000. As you know, Mr. Upmal, as a Jones Act seaman, is entitled to receive maintenance and cure from the date of this accident to the point of maximum medical improvement without regard to liability. Notwithstanding, Mr. Upmal has advised that, to date, nearly two years after his accident, he has yet to receive any benefits from Paradise Divers, Inc. whatsoever. To make matters worse, Mr. Upmal advises that he has incurred tens of thousands of dollars in medical bills and has been forced to completely forego medical care due to Paradise Divers' failure to pay maintenance and cure benefits under the General Maritime Law of the United States.

The letter also requested information about insurance, including excess coverage, from Paradise Divers.

On May 30, 2002, after he had reviewed the insurance documents that were supplied on behalf of Paradise Divers, McLeod sent another letter to Niemeyer, in which McLeod said Upmal intended to pursue claims for negligence, under the Jones Act, and both unseaworthiness and maintenance and cure under the general maritime laws:

> [W]e have reviewed the CIGNA Insurance Company "Captain and Crew Limitation Endorsement". This endorsement, in our opinion, clearly provides coverage for Kevin Upmal's accident. More specifically, the endorsement provides cover for Paradise Divers' liability to a crew member under the Jones Act or the General Maritime Law. Accordingly, the policy should respond to the Jones Act negligence, unseaworthiness, and maintenance and cure claims of

3

Kevin Upmal.

At this point, we anticipate that a Complaint along with a formal demand for maintenance and cure will be prepared within the next week or so. . . . We would specifically like to address Kevin Upmal's formal maintenance and cure demand to Paradise Divers as well as any insurer that may cover the claim. We would also like to place Paradise Divers' insurers on notice that failure to provide coverage and pre-judgment security for Kevin Upmal's claim could subject Paradise Divers to the arrest of the vessel on which Kevin Upmal was employed on the date of the loss, as well as any sister vessels under the common ownership and control of Paradise Divers, Inc. Consequently, the sooner that you can confirm that the CIGNA and the Captain's policy are the only applicable policies impacted by Kevin Upmal's claim and otherwise provide the declaration page to the Captain's policy, the sooner we will be able to move forward with this matter.

On the following day, Niemeyer responded to McLeod that Paradise Divers denied liability for Jones Act negligence but was seeking a defense from its insurers:

I note your comments regarding your belief that there is coverage for Jones Act liability, as well as your intention to file a Complaint within the next week or so. As you are aware, Paradise Divers will be seeking a defense from its carriers with regard to Mr. Upmal's claims. Please keep in mind, however, that although we are happy to provide your client with the insurance information which has been requested pursuant to statute, and although we agree that a defense should be provided, as well as indemnity if such is ultimately necessary, it is Paradise Divers' position that there was no negligence on the part of either Paradise Divers or Mr. Kartman which was the cause of Mr. Upmal's shallow water blackout and his resulting injuries.

On October 24, 2002, Upmal filed an action against Paradise Divers for Jones Act negligence, unseaworthiness, and maintenance and cure. On March 31, 2003, Paradise Divers filed a limitation of liability action under 46 U.S.C. section 185 in the United States District Court for the Southern District of Florida. Upmal moved the district court to dismiss the action as untimely.

The district court adopted the report and recommendation of the magistrate judge, to whom the case had been referred, and dismissed the limitation action as untimely. The district court found that McLeod's letter dated May 31, 2002, in conjunction with his letter dated March 18, 2002, provided sufficient notice to Paradise Divers of Upmal's claims for Jones Act negligence and unseaworthiness. Paradise Divers appealed.

## II. STANDARD OF REVIEW

"We review a dismissal pursuant to Rule 12(b)(6) <u>de novo</u>, applying the same standard as the district court did." <u>Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1225 (11th Cir. 2002). In reviewing the complaint, we "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." <u>Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.</u>, 144 F.3d 732, 735-36 (11th Cir. 1998) (citation and internal quotation marks omitted). We will not affirm the dismissal of a suit on the pleadings alone "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Id. (citation and internal quotation marks omitted).

## III. DISCUSSION

More than a century and a half ago, Congress enacted the Limitation of Liability Act, 46 U.S.C. §§ 181-96, to encourage American ship-building:

> Congress passed the Act in 1851 in an effort to provide American shipowners with benefits equal to those of their foreign competitors. The Act was primarily patterned after the English limitation act, 26 Geo. 3, ch. 86 (1786). Under the Act, a vessel owner, American or foreign, can restrict its liability, resulting from any occurrence for which the vessel is liable, to the value of the vessel and its pending freight.

Vatican Shrimp Co., Inc. v. Solis, 820 F.2d 674, 677 (5th Cir. 1987). We have noted the modern criticisms of the Act, Keys Jet Ski, Inc. V. Kays, 893 F.2d 1225, 1228 (11th Cir. 1990), and more than forty-five years ago, Judge Learned Hand wrote, "[I]t is at least doubtful whether the motives that originally lay behind the limitation are not now obsolete." In re United States Dredging Corporation, 264 F.2d 339, 341 (2d Cir. 1959). This appeal involves an amendment of the Act that restricts the generous benefit long afforded vessel owners.

In 1936 Congress amended section 185 of the Act "by adding a time bar that requires a vessel owner to file its petition in federal court within six months of receiving 'written notice of claim.'" Id. Section 185 reads as follows:

6

The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability . . . and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor . . . .

46 App. U.S.C. § 185.

The purpose of the amendment was to curb the abuse of delays by shipowners in filing limitation actions:

In practice it [had] developed that the proceeding by way of petition for limitation of liability was often a source of delay and circuity of action, because shipowners did not institute this independent proceeding until after the question of liability had been litigated and determined against them. To alleviate the abuses inherent in this situation, the Congress, on June 5, 1936, amended Section 185 to require that a petition for limitation must be filed within six months of notice of claim.

The Deep Sea Tankers, Ltd. v. The Long Branch, 258 F.2d 757, 772 (2d Cir. 1958). The time limit imposed by the amendment, therefore, is strictly enforced. See Cincinnati Gas & Elec. Co. v. Abel, 533 F.2d 1001, 1005 (6th Cir. 1976).

There are two common and similar methods for determining the sufficiency of a notice of claim under section 185. The first is found in a decision of the Second Circuit. In Doxsee Sea Clam Co. v. Brown, 13 F.3d 550 (2d Cir. 1994), the Second Circuit concluded that "[n]otice will be sufficient if it informs the

7

vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation." 13 F.3d at 554 (internal citations omitted). In In re Complaint of McCarthy Bros. Co./Clark Bridge, 83 F.3d 821 (7th Cir. 1996), the Seventh Circuit cited Doxsee as the "most authoritative case," and adopted its standard. 83 F.3d at 829. The Seventh Circuit clarified that "the written notice must reveal a 'reasonable possibility' that the claim made is one subject to limitation." Id. (citing In re Complaint of Tom-Mac, Inc., 76 F.3d 678, 683 (5th Cir. 1996)). The second test of sufficiency is found in many district court cases: the writing must (1) demand a right or supposed right; (2) blame the vessel owner for any damage or loss; and (3) call upon the vessel owner for anything due to the claimant. See e.g. Rodriguez Moreira v. Lemay, 659 F. Supp. 89, 91 (S.D. Fla. 1987). Under either test, Upmal's notice to Paradise Divers was clearly sufficient to begin the running of the limitation period.

The correspondence in March and May 2002 together provided sufficient notice under the Doxsee test. The May 30, 2002, letter advised Paradise Divers of a claim subject to limitation, because Upmal asserted a claim for Jones Act negligence, unseaworthiness, and maintenance and cure, and stated his intent to file a complaint. The March and May correspondence also informed Paradise Divers that the amount of the claim exceeded the value of the vessel, because the March

8

18, 2002, letter stated that Upmal had incurred tens of thousands of dollars in medical expenses and requested information about insurance, including excess coverage, and the May 30, 2002, letter also sought information about additional insurance coverage. Given that Upmal's medical expenses exceeded tens of thousands of dollars and the letters requested information about excess insurance, it would be unreasonable to conclude that Upmal's claim did not exceed the modest value of the vessel, which was $50,000.

Under the Moreira test, the notice from Upmal also was sufficient. The May 30, 2002, letter makes a demand by its reference to claims for Jones Act negligence and unseaworthiness. The letter also references the liability of Paradise Divers in relation to the accident. Finally, the letter calls upon Paradise Divers for anything due by giving notice of Upmal's intent to file suit.

The attempt of Paradise Divers to construe the letter narrowly as referencing only a claim for maintenance and cure is unavailing. The May 30, 2002, letter is plain that Upmal intended to bring claims for Jones Act negligence and unseaworthiness in addition to maintenance and cure. Although Paradise Divers now argues otherwise, it is also clear from Niemeyer's letter on May 31, 2002, that she was fully aware of the nature of Upmal's claims.

As a final matter, although both parties agree that, if an alleged notice of

claim is ambiguous, the law requires a vessel owner to oblige the claimant to make his position clear, the parties disagree about the application of that rule here. Paradise Divers argues that the May 30, 2002, letter was ambiguous, and Paradise Divers argues that it sought clarification from Upmal, which tolled the statute of limitation. We disagree. The May 30, 2002, letter was unambiguous. We need not decide, therefore, whether the law places any obligation on the vessel owner to seek clarification or whether the attempt at clarification by Paradise Divers was sufficient.

## IV. CONCLUSION

Because the correspondence between Upmal and Paradise Divers, which culminated in the May 30, 2002, letter, gave Paradise Divers sufficient written notice of a limitable claim against the vessel, the limitation action filed by Paradise Divers almost nine months after receipt of the letter was untimely. The judgment of the district court, therefore, is

**AFFIRMED.**

10